# STEVEN BRIGGS *v.* STATE OF MARYLAND

[No. 75, September Term, 1979.]

*Decided November 10, 1980.*

The cause was argued before SMITH, DIGGES, ELDRIDGE, COLE, DAVIDSON and RODOWSKY, JJ., and reargued before MURPHY, C. J., and SMITH, DIGGES, ELDRIDGE, COLE, DAVIDSON and RODOWSKY, JJ.

Argued and reargued by *Thomas J. Saunders, Assistant Public Defender,* with whom was *Alan H. Murrell, Public Defender,* on the brief, for appellant.

Argued and reargued by *Stephen Rosenbaum, Assistant Attorney General,* with whom was *Stephen H. Sachs, Attorney General,* on the brief, for appellee.

DIGGES, J., delivered the opinion of the Court.

This case arose out of a scuffle on January 25, 1978, between petitioner Steven Briggs and several officers at the Maryland Correctional Institute in Hagerstown where petitioner was then serving a prison sentence for armed robbery. Briggs was subsequently convicted in the District Court of Maryland on February 15, 1978, of assault on one of these officers and Judge J. Louis Boublitz sentenced him to thirty days imprisonment to run consecutively from the term he was then serving. The accused appealed this judgment to the Circuit Court for Washington County.[1] After a

---

1. Section 12-401 (a) of the Maryland Courts & Judicial Proceedings Article (1974, 1980 Repl. Vol.) grants to a criminal defendant an absolute

trial *de novo* in that court on July 24, 1979, Briggs was again found guilty of the same offense, but this time Judge John P. Corderman directed imprisonment for ten years to run consecutive to the term for which Briggs was then incarcerated. Petitioner challenges this substantially enhanced punishment on the ground that the circuit court misinterpreted section 12-702 ((b) and (c)) of the Maryland Courts & Judicial Proceedings Article (1974, 1980 Repl. Vol.) by basing its sentencing decision on the fact that Briggs was convicted of three other assaults during the interim period between the District Court trial of this case and his trial *de novo* in the circuit court. He claims this reliance on these unrelated assaults was error because the conduct from which those intervening convictions arose occurred prior to the imposition of the original sentence by the District Court. We agree with petitioner and, consequently, will remand the case to the circuit court for resentencing.

As an aid in explaining the reasons for our conclusion, it is desirable that we first chronicle the significant additional events. During the intervening period between the petitioner's first trial in the District Court and his trial *de novo* in the circuit court seventeen months later, Briggs was convicted in the Circuit Court for Washington County before Judge Irving Rutledge of three assaults on Department of Correction officers.[2] For these three offenses, on a *de novo* appeal in the circuit court, the accused received one year additional imprisonment, the same punishment as had been imposed below. The incident which gave rise to the three interim convictions, however, occurred on December 5, 1977 — seven weeks before the scuffle which spawned the case now before us. Judge Corderman, when increasing petitioner's sentence in this case from thirty days to ten years imprisonment following reconviction on appeal to the circuit

right to appeal from a final judgment of the District Court. On appeal, the case is tried *de novo* in the circuit court. *Id.*, § 12-401 (d). *See* Hardy v. State, 279 Md. 489, 369 A.2d 1043 (1977); Burch v. State, 278 Md. 426, 365 A.2d 577 (1976). When in this opinion the terms *de novo* appeal or *de novo* trial are used, we refer to an appeal authorized by § 12-401 (a) and (b).

**2.** These three charges were also before the circuit court on a *de novo* appeal from convictions by Judge Boublitz in the District Court.

court, based this enhanced punishment solely on the fact that these intervening convictions had occurred.

In determining the proper punishment following a conviction on *de novo* appeal, the circuit court recognized that section 12-702 of the Courts & Judicial Proceedings Article limits the discretion of the sentencing judge. In relevant part, this statute provides:

(b) *Remand for sentence or new trial; limitations on increases in sentences.* — If an appellate court remands a criminal case to a lower court in order that the lower court may pronounce the proper judgment or sentence, or conduct a new trial, and if there is a conviction following this new trial, the lower court may impose any sentence authorized by law to be imposed as punishment for the offense. However, it may not impose a sentence more severe than the sentence previously imposed for the offense unless:

(1) The reasons for the increased sentence affirmatively appear;

(2) The reasons are based upon objective information concerning *identifiable conduct on the part of the defendant occurring after the original sentence was imposed* [(emphasis supplied)]; and

(3) The factual data upon which the increased sentence is based appears as a part of the record.

(c) *Limitation on sentence following de novo appeal.* — If a defendant who appeals from a conviction in the District Court is convicted after a trial de novo on appeal, the appellate court may impose any sentence authorized by law to be imposed as punishment for the offense, or it may impose a sentence more severe than that imposed in the District Court but only under the conditions prescribed in subsection (b).

The circuit court here determined, and the State in this Court argues, that the intervening assault convictions of petitioner Briggs constituted "identifiable conduct on the part of the defendant which occurred after the original sen-

tence was imposed," authorizing harsher punishment.[3] The petitioner contends, on the other hand, that the three interim convictions which took place after the imposition of the District Court sentence in the present case, but whose underlying events occurred before that sentence was there pronounced, do not constitute subsequent "conduct" within the meaning of section 12-702 ((b) and (c)) so as to permit enhanced incarceration.

Since the genesis of section 12-702 ((b) and (c)) is crucial to our inquiry, we shall first set forth its background prior to discussing the specific issue presented here. The text of the statute represents our State legislature's response to adjudications made by both the United States Supreme Court and this State's Court of Special Appeals. These cases, discussed in their chronological order, are *North Carolina v. Pearce,* 395 U.S. 711, 89 S. Ct. 2072, 23 L. Ed. 2d 656 (1969), *Cherry v. State,* 9 Md. App. 416, 264 A.2d 887 (1970), and *Colten v. Kentucky,* 407 U.S. 104, 92 S. Ct. 1953, 32 L. Ed. 2d 584 (1972). The operative language of the statutory enactment derives from *North Carolina v. Pearce,* 395 U.S.

---

3. The complete post-trial comments of Judge Corderman in sentencing petitioner Briggs were as follows:

The commission of an assault under any circumstances is a very serious matter, no matter how slight the assault may be. But the commission of an assault within the confines of a prison is an exceedingly serious matter. Such an assault threatens the very security of the institution and the lives and well-being of both the inmate population, as well as those that are charged with the responsibility of maintaining that institution.

Since this matter was heard in the District Court, this Defendant has been convicted in the Circuit Court for Washington County for assault on three correctional officers. Those convictions were in the fall of 1978 and were after this incident. Pursuant to Courts and Judicial Proceedings Article 12-702, the Court specifically finds that it has before it objective information concerning identifiable conduct on the part of this Defendant which occurred after the original sentence was imposed.

I find that since the imposition of sentence in the District Court, this Defendant has, in fact, been convicted of substantial infractions. Therefore, this Court does not feel bound in any way by the sentence of thirty days imposed by Judge Boublitz.

Prisoners must know that assault upon correctional personnel will be dealt with, upon conviction, in the strongest possible terms. It is the sentence of this Court that the Defendant, Steven Briggs, be committed to the care and custody of the Commissioner of Correction for a period of ten years, said sentence to be consecutive to any term currently being served by the Defendant Briggs.

711, 89 S. Ct. 2072, 23 L. Ed. 2d 656 (1969), where the Supreme Court first considered whether there were any federal constitutional limitations upon the power of a state trial judge to impose a harsher sentence following reconviction of a criminal defendant who has successfully attacked his initial determination of guilt. Although *Pearce* held that there is no absolute constitutional prohibition against imposing a harsher sentence following such a reconviction, the Supreme Court there declared that the due process clause of the fourteenth amendment requires that judicial vindictiveness play no part in sentencing decisions following retrial. 395 U.S. at 723-724. Moreover, since the fear of such retaliation may chill the exercise of any existing right to appeal, *Pearce* makes clear that due process further dictates that the defendant be freed of any such trepidation. 395 U.S. at 725. To effectuate these ends, the Supreme Court announced a broad rule:

> [W]henever a judge imposes a more severe sentence upon a defendant after a new trial, the reasons for his doing so must affirmatively appear. Those reasons must be based upon objective information concerning identifiable conduct on the part of the defendant occurring after the time of the original sentencing proceeding. And the factual data upon which the increased sentence is based must be made part of the record, so that the constitutional legitimacy of the increased sentence may be fully reviewed on appeal. [*North Carolina v. Pearce, supra* at 726. See generally Aplin, *Sentence Increases on Retrial after North Carolina v. Pearce,* 39 Cin. L. Rev. 427 (1970).] [4]

The due process limitations on sentencing set forth in *Pearce* were confined in that case to a retrial following a

---

4. The effect of this decision was to set aside longstanding Maryland practice exemplified by Hobbs v. State, 231 Md. 533, 191 A.2d 238 (1963), *cert. denied* 375 U.S. 914 (1963), where this Court held that since a prior criminal trial was rendered a nullity by a successful appeal, there were no limitations such as those imposed by *Pearce* on the imposition of a new sentence in the second trial. *See also* Moon v. State, 250 Md. 468, 243 A.2d 564 (1968).

vertical review on the record by an appellate court. Thus, one of the unresolved issues which emerged in the wake of *Pearce* concerned whether those same fourteenth amendment due process limitations applied to a defendant who, having been convicted of an offense in a lesser trial court, took a horizontal appeal of right to a superior trial court and there received a trial *de novo*.[5] With no decisions of this Court to guide them, the Court of Special Appeals in *Cherry v. State, supra,* elected to join those courts which had held that the principles announced in *Pearce* apply with equal force to a trial *de novo*. Subsequently, the Maryland General Assembly, by its enactment effective July 1, 1972, rewrote Article 5, section 43 of the Maryland Code to include the expansion of the *Pearce* doctrine as enunciated in *Cherry*.[6] Simultaneous to the legislative consideration of the matter in this State, the United States Supreme Court was pondering the same issue. In *Colten v. Kentucky,* 407 U.S. 104, 92 S. Ct. 1953, 32 L. Ed. 2d 584 (argued April 17, 1972; decided June 12, 1972), the Court determined that the "prophylactic rule announced in *Pearce*" did not apply to the judge of a superior court resentencing a defendant following a *de novo* trial on appeal from an inferior tribunal. 407 U.S. at 118. The *Colten* court reasoned that, since there was little danger that a defendant seeking a trial *de novo* would be subject to judicial vindictiveness for exercising his right of appeal, and since it was unlikely that fear of an avengeful sentence would deter the request for a second trial, due pro-

---

5. After North Carolina v. Pearce, 395 U.S. 711, 89 S. Ct. 2072, 23 L. Ed. 2d 656 (1969), several of our sister jurisdictions split on this issue. *Compare* Rice v. North Carolina, 434 F.2d 297 (4th Cir. 1970), *vacated* 404 U.S. 244 (1971); Bronstein v. Superior Court, County of Maricopa, 106 Ariz. 251, 475 P.2d 235 (1970); State v. Shak, 51 Haw. 626, 466 P.2d 420 (1970), *cert. denied,* 400 U.S. 930 (1970); Eldridge v. State, 256 Ind. 113, 267 N.E.2d 48 (1971); Commonwealth v. Harper, 219 Pa. Super. 100, 280 A.2d 637 (1971) (holding that *Pearce* applies to trials *de novo) with* Lemieux v. Robbins, 414 F.2d 353 (1st Cir. 1969), *cert. denied,* 397 U.S. 1017 (1970); Mann v. Commonwealth, 359 Mass. 661, 271 N.E.2d 331 (1971); People v. Olary, 382 Mich. 559, 170 N.W.2d 842 (1969); State v. Stanosheck, 186 Neb. 17, 180 N.W.2d 226 (1970); State v. Sparrow, 276 N.C. 499, 173 S.E.2d 897 (1970); Evans v. City of Richmond, 210 Va. 403, 171 S.E.2d 247 (1969) (holding that *Pearce* does not apply to trials *de novo). See also,* Aplin, *Sentence Increases on Retrial After North Carolina v. Pearce,* 39 Cin. L. Rev. 427, 455 (1970).

6. Laws of Maryland 1972, Ch. 181, § 6; codified as Md. Code (1957, 1968 Repl. Vol., 1972 Cum. Supp.), Art. 5, § 43; recodified in 1973 in the Courts & Judicial Proceedings Article as section 12-702 (c).

cess did not require the application of the *Pearce* rule to *de novo* trials. *Id.* at 116. Thus, *Colten* puts to rest any contention that the United States Constitution, through its fourteenth amendment due process clause or otherwise, requires the application of the doctrine articulated in *Pearce* to a trial *de novo.*

The Maryland General Assembly again addressed this issue when, as a part of its ongoing code revision project, the Courts and Judicial Proceedings Article was submitted to and approved by the legislature in 1973. Before that body when it considered this legislation was a revisor's note appended to the text of section 12-702 which explained that, after *Colten v. Kentucky, supra,* "the constitutional mandate which the Court of [Special] Appeals had perceived in *Cherry* turned out to be non-existent." Laws of Maryland 1973, 1st Sp. Sess., Ch. 2, § 1. The note further stated that, as a result of this judicial history:

> [w]e have a constitutional limitation on increase of sentence if there is an ordinary appeal and either a remand for sentencing or a re-conviction after a new trial. And we have a statutory limitation on increase of sentence if there is a conviction after a de novo appeal. What § 12-702 proposes is the codification of the case law, and the retention of the existing statutory law, thus providing a uniform approach to the problem, and one readily accessible to and understandable by those involved in criminal sentencing.

While revisor's notes are not part of legislative enactments,[7] it is clear from the content of this appendage that the General Assembly was made aware that the strictures of section 12-702 (c) were not required by the Supreme Court holding in *Pearce.*[8] To the extent that the revisor's note indicates

---

**7.** The Courts & Judicial Proceedings Article, as enacted, is set forth in Chapter 2 of the Laws of Maryland (1973, 1st Sp. Sess.). Section 19 of that Chapter states that "the Revisor's Notes contained in this Act shall not become law or be deemed to have been enacted as a part of this Act."

**8.** It is not so clear, however, that the legislature, when it modified Article 5, § 43 in 1972 to statutorily apply the *Pearce* standard to trials *de novo,* was aware of the *Colten* decision. *Compare* Laws of Maryland 1972, Ch. 181, § 6 which contains only section 43 as amended *with* Md. Code

legislative intent, it is apparent that the General Assembly chose to apply the *Pearce* rule to a trial *de novo* in the interests of uniformity and ease of understanding, rather than in an effort to codify required constitutional doctrine. Consequently, we must now interpret this statutory language and apply its dictates to the matter presently before us.

The basic principles of statutory construction as developed by this Court are so frequently recited that brevity in this regard now becomes a virtue and will suffice here. Fundamentally, the object of all statutory construction is to determine and effectuate the enactment's purpose. *E.g., Harbor Island Marina v. Calvert Co.,* 286 Md. 303, 407 A.2d 738 (1979). Particularly, in a state such as Maryland where debates, reports and other contemporaneous legislative history have not usually been recorded and preserved, the words of the statute itself provide the most reliable indication of its purpose. Consequently, we look in the first instance to the language chosen by the legislature to express its design, *e.g., State v. Berry,* 287 Md. 491, 495, 413 A.2d 557, 560 (1980); *Frank v. Baltimore County,* 284 Md. 655, 658, 399 A.2d 250, 253 (1979); if this phraseology makes sense and is free from ambiguity our task is complete, for this Court will not indulge subtlety at the expense of the ordinary and natural import of the words used. *E.g., John McShain, Inc. v. State,* 287 Md. 297, 301, 411 A.2d 1048, 1050 (1980); *Brown v. State,* 285 Md. 469, 474, 403 A.2d 788, 791 (1979). Thus, only when the statutory language is unclear or ambiguous will we look to other sources to guide us in our search for its meaning. *E.g., Brown v. Brown,* 287 Md. 273, 412 A.2d 396 (1980); *State v. Fabritz,* 276 Md. 416, 422, 348 A.2d 275, 279 (1975), *cert. denied,* 425 U.S. 942 (1975). Moreover, it is well established in this State that the verbiage of penal statutes, such as that before us, is to be strictly construed, "by which it is meant that courts will not

---

(1957, 1968 Repl. Vol., 1972 Cum. Supp.), Art. 5, § 43 in which a Revisor's Note first appears declaring that *Colten* "in no way invalidates the legislative policy established in amended § 43." Colten v. Kentucky, 407 U.S. 104, 92 S. Ct. 1953, 32 L. Ed. 2d 584 (1972), preceded by 18 days the 1972 act of the Maryland legislature codifying Cherry v. State, 9 Md. App. 416, 264 A.2d 887 (1970).

extend the punishment to cases not plainly within the language used." *State v. Fabritz, supra* (quoting from *State v. Archer,* 73 Md. 44, 57, 20 A. 172, 172 (1890)).

Having these tenets before us, we now examine section 12-702. This statute prohibits without equivocation the imposition of a more severe sentence upon a defendant who has been convicted in a trial *de novo* after an appeal from the District Court unless, among other things, "[t]he reasons [for the increase] are based upon objective information concerning *identifiable conduct* on the part of the defendant *occurring after the original sentence was imposed. . . ."* (Emphasis supplied). We think it manifest that this language precludes consideration by a resentencing judge of an interim conviction of the defendant when the misbehavior which gave rise to that conviction occurred before the original sentence was imposed in the District Court.[9] Although a conviction adjudicates the existence of criminal conduct, the terms "conviction" and "conduct" are not synonymous. Conduct refers to "a mode or standard of personal behavior especially as based on moral principles," *Webster's Third New International Dictionary* (1961), or "[t]he way a person acts; behavior," *The American Heritage Dictionary* (1969); *accord, Kelly v. State,* 151 Md. 87, 100, 133 A. 899 (1926). A conviction does not constitute criminal behavior or conduct on the part of a defendant, but merely judicially establishes its previous occurrence. The State argues that we should equate a conviction of the defendant with identifiable conduct on his part occurring subsequent to the District Court sentence in order to authorize an enhanced punishment following reconviction in the circuit court. This we cannot do. Given the clear phraseology used in the statute we are here construing, this Court will not inflict violence upon that language by placing a judicial gloss on its meaning to equate "conduct on the part of the defendant" with an intervening conviction for another

---

**9.** Among the issues ordered by this Court to be addressed on reargument was whether this phrase contained in § 12-702 (b) is so vague as to be meaningless and void. We agree with both petitioner and respondent that the language utilized in this statute is entirely adequate and is not void for vagueness.

charge. It is not the province of this Court to examine the substantive wisdom of an act of the legislature and to modify it merely because we may wish to implement a policy different from that expressed in the statute; "in short, the judiciary may not sit as a superlegislature to judge the wisdom or desirability of legislative policy determinations. . . ." *City of New Orleans v. Dukes*, 427 U.S. 297, 303, 96 S. Ct. 2513, 49 L. Ed. 2d 511 (1976) (equal protection challenge to local economic regulations denied).[10]

Although the broad rule enunciated as a matter of constitutional principle in *North Carolina v. Pearce, supra,* under the later decision of *Colten v. Kentucky, supra,* does not extend to the case before us and is thus not controlling here, we are interpreting a statute whose language was adopted from the *Pearce* decision. Accordingly, an examination of *Pearce* is helpful to our inquiry. In so doing, we find further support for concluding that the resentencing judge may only consider that conduct on the part of the defendant which occurs after sentencing in the original proceeding. Mr. Justice White in his concurring opinion in *Pearce* pointed to the breadth of the principle there enunciated in the Court's opinion and urged an alternative rule:

> [I]n my view, [this Court] should authorize an increased sentence on retrial based on any objective, identifiable factual data not known to the trial judge at the time of the original sentencing proceeding. [395 U.S. 711, 751, 89 S. Ct. at 2089.]

Had the Supreme Court adopted the rule suggested by Justice White or had the legislature chosen that language when formulating the statutory counterpart applicable to trials *de novo* in this State, then perhaps the additional sentence imposed here would be authorized. *See United States v. Lopez*, 428 F.2d 1135, 1139 (1970). The General Assembly does not operate in a vacuum; it is presumed to have full

---

10. For a discussion of the rule announced in *Pearce,* including the underlying reasons for its adoption, see Aplin, *Sentence Increases on Retrial After North Carolina v. Pearce*, 39 Cin. L. Rev. 427 (1970); *see also United States v. Coke*, 404 F.2d 836 (1968) (en banc) (opinion authored by Judge Friendly).

knowledge of prior and existing law on the subject of a statute it passes. *E.g., Bowers v. State,* 283 Md. 115, 389 A.2d 341 (1978). Since section 12-702 utilized the wording of the *Pearce* rule almost verbatim, the legislature certainly was aware of that decision and Justice White's views in regard to it. Moreover, in 1973 when the present statute was reenacted, it was clear that, as a matter of federal constitutional law, the *Pearce* rule was inapplicable to trials *de novo;* thus, the legislature was free to choose any standard governing resentencing following a trial *de novo* or no standard at all. Through section 12-702 (c), the legislature employed its prerogative by choosing to protect the defendant exercising his right to a trial *de novo* from an increased sentence as long as his conduct following the first trial is above reproach.[11] Consequently, we will remand this case to the circuit court for the imposition of a proper sentence.

> *Order of the Circuit Court for Washington County sentencing Steven Briggs to serve a term of ten years vacated, and case remanded to that court for the imposition of a sentence in compliance with the views expressed in this opinion.*
>
> *Costs to be paid by Washington County.*

---

11. There is no question in the case now before us concerning the propriety of the thirty day sentence imposed by Judge Boublitz in the District Court. For a case discussing the scope of a sentencing judge's inquiry into the past conduct of the person being sentenced, but where the limitations imposed by § 12-702 were not involved, see Henry v. State, 273 Md. 131, 140-51, 328 A.2d 293, 299-305 (1974). For United States Supreme Court decisions generally discussing this matter, in addition to the seminal case of Williams v. New York, 337 U.S. 241, 69 S. Ct. 1079, 93 L. Ed. 1337 (1949), see United States v. Grayson, 438 U.S. 41, 98 S. Ct. 2610, 57 L. Ed. 2d 582 (1978) and United States v. Tucker, 404 U.S. 443, 92 S. Ct. 589, 30 L. Ed. 2d 592 (1972). In *Henry,* we recognized that whereas bald accusations of prior criminal conduct are not to be considered by a sentencing judge, reliable evidence concerning the details or surrounding circumstances of such conduct ordinarily may be taken into account; while there may be exceptions, this is generally permitted even if the defendant at the time of sentencing remained untried for the prior conduct or had been acquitted of the charges involving that conduct. *Id.* at 147-48, 328 A.2d at 303. Manifestly, this would encompass conduct resulting in a conviction from which, at the time of sentencing in the case involving later criminal conduct, there was an appeal pending from a conviction involving earlier misconduct.