514 A.2d 1219

**Darryl Gene JONES**

v.

**STATE of Maryland.**

**No. 17, Sept. Term, 1986.**

Court of Appeals of Maryland.

Sept. 30, 1986.

450

Nancy S. Forster, Asst. Public Defender (Alan H. Murrell, Public Defender, on brief), Baltimore, for appellant.

Valerie V. Cloutier, Asst. Atty. Gen. (Stephen H. Sachs, Atty. Gen., on brief), Baltimore, for appellee.

Argued before MURPHY, C.J., and ELDRIDGE, COLE, RODOWSKY, COUCH, McAULIFFE and ADKINS, JJ.

ADKINS, Judge.

In 1973, the General Assembly enacted § 12–702(b) of the Courts and Judicial Proceedings Art.[1]  The statutory lan-

---

1.  Enacted by § 1, Ch. 2, Acts of 1973 (1st Spec. Sess.), § 12–702(b) provides:

    "If an appellate court remands a criminal case to a lower court in order that the lower court may pronounce the proper judgment or sentence, or conduct a new trial, and if there is a conviction following this new trial, the lower court may impose any sentence authorized by law to be imposed as punishment for the offense. However, it may not impose a sentence more severe than the sentence previously imposed for the offense unless:

guage that contains the subsection's strict limitations on sentence increases in criminal cases was adopted almost verbatim from certain language in *North Carolina v. Pearce*, 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969). *Briggs v. State*, 289 Md. 23, 27–28, 421 A.2d 1369, 1372 (1980); *Sweetwine v. State*, 288 Md. 199, 214, 421 A.2d 60, 68, *cert. denied*, 449 U.S. 1017, 101 S.Ct. 579, 66 L.Ed.2d 477 (1980). More recently, the Supreme Court has had second thoughts about some of the things it said in *Pearce. See, e.g., Wasman v. United States*, 468 U.S. 559, 104 S.Ct. 3217, 82 L.Ed.2d 424 (1984), and *Texas v. McCullough*, 475 U.S. ——, 106 S.Ct. 976, 89 L.Ed.2d 104 (1986). The question before us is whether we should treat the literal language of § 12–702(b) as effectively modified by the more recent Supreme Court decisions. We decline to do so.

The factual context in which this question arises is uncomplicated and undisputed. In 1982 a jury sitting in the Circuit Court for Montgomery County (Raker, J., presiding) convicted appellant, Darryl Gene Jones, of, among other things, robbery with a deadly weapon. Judge Raker sentenced him to nine years of imprisonment for that offense. A year later the Court of Special Appeals reversed the conviction in an unreported opinion, *Jones v. State*, No. 361, Sept. Term, 1983 (filed December 22, 1983).

In 1985 another jury sitting in the Circuit Court for Montgomery County (Mitchell, J., presiding) reconvicted Jones of the same offense. At sentencing, Judge Mitchell's attention was drawn to the fact that Jones's record listed a number of criminal offenses that Jones had *committed* before his first trial but of which he had not been *convicted* until after it. Section 12–702(b) prohibits an increased

---

(1) The reasons for the increased sentence affirmatively appear;

(2) The reasons are based upon objective information concerning identifiable conduct on the part of the defendant occurring after the original sentence was imposed; and

(3) The factual data upon which the increased sentence is based appears as a part of the record."

second sentence, unless, among other things, the reasons for it "are based on objective information concerning identifiable conduct on the part of the defendant occurring *after* the original sentence was imposed" [emphasis supplied]. Nevertheless, the State argued that "under Supreme Court decisions, Your Honor can increase the sentence in this case if you feel it is appropriate." Judge Mitchell obviously agreed, for he gave Jones 12 years.

In another unreported opinion, the Court of Special Appeals affirmed, explaining that:

"The reason for the increased sentence was that in the interim [following Jones's first trial], the appellant had been convicted of five armed robberies in the District of Columbia. The Supreme Court placed the constitutional imprimatur on such an increase in *Wasman v. United States, [supra ]."*

*Jones v. State.* We granted Jones's petition for certiorari to consider the important question presented. 305 Md. 683, 506 A.2d 254 (1986). For the reasons we are about to give, we reverse the Court of Special Appeals.

■ Jones argues that what Judge Mitchell did was squarely prohibited by the literal language of § 12–702(b). He is correct. As we have already noted, one of the conditions that must be met if there is to be an increased sentence after a retrial of a criminal case is that "[t]he reasons [for the increased sentence] are based on objective information concerning identifiable conduct on the part of the defendant occurring after the original sentence was imposed...." Section 12–702(b)(2). Jones's "identifiable conduct" (criminal activity) occurred *before* his "original sentence" was imposed. What occurred *afterwards* were the convictions based on that activity. But we made it clear in *Briggs* that in § 12–702(b)(2) the phrase "conduct of the defendant" does not include a conviction within the notion of conduct. "A conviction does not constitute criminal behavior or conduct on the part of a defendant, but merely judicially establishes its previous occurrence." 289 Md. at

32, 421 A.2d at 1375. We thought "it manifest that this language precludes consideration by a resentencing judge of an interim conviction of the defendant when the misbehavior which gave rise to that conviction occurred before the original sentence was imposed...." 289 Md. at 32, 421 A.2d at 1374.[2] Thus, on its face, § 12–702(b) bars an increase in sentence under the circumstances of this case.

■ The State, however, urges us to disregard the statutory language or, more properly, to reinterpret it in light of Supreme Court decisions subsequent to *Pearce.* It points out that under *Wasman,* "there is nothing constitutionally impermissible in a sentencing court's reliance upon interim criminal convictions to justify an increased sentence." Appellee's Brief at 2. It further argues that under *McCullough,* "the *Pearce* presumption of vindictiveness does not apply when [as in the case before us] different sentencers preside over the two trials." *Id.* at 5. All this may well be true as a matter of federal constitutional law but the argument has no bearing on the meaning of § 12–702(b). We explain.

In *Pearce* the Supreme Court said:

"Due process of law, then, requires that vindictiveness against a defendant for having successfully attacked his first conviction must play no part in the sentence he receives after a new trial. And since the fear of such vindictiveness may unconstitutionally deter a defendant's exercise of the right to appeal or collaterally attack his first conviction, due process also requires that a defendant be freed of apprehension of such a retaliatory motivation on the part of the sentencing judge.

---

**2.** We are aware that *Briggs* dealt with a *de novo* appeal from the District Court and thus involved § 12–702(c), as it then stood, and not § 12–702(b). But the phrase "conduct of the defendant" that we construed in *Briggs* is contained only in subsection (b); it is incorporated in subsection (c) by reference. It clearly has the same meaning for purposes of both subsections. *Briggs,* 289 Md. at 27, 421 A.2d at 1372.

"In order to assure the absence of such a motivation, we have concluded that whenever a judge imposes a more severe sentence upon a defendant after a new trial, the reasons for his doing so must affirmatively appear. Those reasons must be based upon objective information concerning identifiable conduct on the part of the defendant occurring after the time of the original sentencing proceeding. And the factual data upon which the increased sentence is based must be made part of the record, so that the constitutional legitimacy of the increased sentence may be fully reviewed on appeal." 345 U.S. at 725–726, 89 S.Ct. at 2080–2081, 23 L.Ed.2d at 669–670 [footnote omitted].[3]

As we pointed out in *Briggs,* the General Assembly was fully aware of *Pearce* when it enacted § 12–702(b). *See* 289 Md. at 33, 421 A.2d at 1375. And although the effect of that legislative action may have been "to codify the constitutional doctrine articulated by the Supreme Court in ... *Pearce*" (appellee's brief at 7) it did more than that. It adopted not only the *Pearce* doctrine but also significant portions of the *Pearce* language as the statutory policy of Maryland. Put otherwise, the General Assembly did not say "We enact *Pearce* as it now stands or may hereafter be modified by the Supreme Court." It enacted a clear and specific law. The fact that "the scope and thrust of *Pearce*" have been "clarified" in *McCullough,* 475 U.S. at ——, 106 S.Ct. at 982, 89 L.Ed.2d at 114 or modified in *Wasman* does not change what the statute says, any more than would the statute be repealed were the Supreme Court to overrule *Pearce in toto.* Even if the Supreme Court now believes that due process does not now forbid what it seemed to prohibit in *Pearce, see Wasman,* 468 U.S. at 568, 571–572, 104 U.S. at 3223, 3225, 82 L.Ed.2d at 435, that has no bearing on the General Assembly's statutory policy and

---

**3.** Comparison of the second paragraph quoted from *Pearce* with the language of § 12–702(b) (n. 1, *supra* ), demonstrates how closely the legislature tracked the words of the Court.

the intent embodied in it. *See Briggs*, 289 Md. at 31–32, 421 A.2d at 1374–1375.

That the General Assembly deliberately adopted its own policy as to increased sentences is made clear by *Briggs*. That case, as we have seen, dealt with § 12–702(c), a provision limiting sentence increases after *de novo* trials on appeal from the District Court. In *Colten v. Kentucky*, 407 U.S. 104, 92 S.Ct. 1953, 32 L.Ed.2d 584 (1972), the Supreme Court concluded that, as a matter of due process, the *Pearce* rule did not apply in a *de novo* appeal situation. That holding, too, was made known to the General Assembly. *Briggs*, 289 Md. at 30, 421 A.2d at 1373. The legislature, nevertheless, adopted § 12–702(c), which applied the *Pearce* rule to *de novo* appeals despite the lack of a federal constitutional requirement for doing so. We thought it "apparent that the General Assembly chose to apply the *Pearce* rule to a trial *de novo* in the interests of uniformity and ease of understanding, rather than in an effort to codify required constitutional doctrine." 289 Md. at 31, 421 A.2d at 1374.

So far as § 12–702(b) is concerned, we decided *Briggs* (thereby construing the "conduct" provision of that subsection) in 1980. The legislature, presumptively aware of that decision, *In Re Ramont K.*, 305 Md. 482, 485, 505 A.2d 507, 508 (1986), *Harden v. Mass Transit Adm.*, 277 Md. 399, 406, 354 A.2d 817, 821 (1976), has not amended the subsection. *Wasman* was decided in 1984. The legislature has met twice since then but has not amended the subsection. This supports our view that § 12–702(b) is a statement of legislative policy that stands independent of current Supreme Court notions of what due process may require. A state is, of course, free to adopt prophylactic measures that provide protections beyond those offered by a constitution. *Mills v. Rogers*, 457 U.S. 291, 299–300, 102 S.Ct. 2442, 2448–2449, 73 L.Ed.2d 16, 23 (1982); *Dorsey v. State*, 56 Md.App. 54, 60–61, 466 A.2d 546, 549 (1983). *See also, Lodowski v. State*, 307 Md. 233, 245, 513 A.2d 299, 305–306 (1986);

*Attorney General v. Waldron,* 289 Md. 683, 714–715 n. 20, 426 A.2d 929, 946 (1981).

As we were in *Briggs,* we are here interpreting "a statute whose language was adopted from the *Pearce* decision." 289 Md. at 33, 421 A.2d at 1375. As we did in *Briggs,* we attach to that statute its plain meaning and we hold that the increased sentence in this case, because it was not based on "identifiable conduct on the part of the defendant occurring after the original sentence was imposed," is in violation of § 12–702(b) and invalid.

JUDGMENT OF THE COURT OF SPECIAL APPEALS REVERSED. CASE REMANDED TO THAT COURT WITH DIRECTION TO VACATE APPELLANT'S SENTENCE AND TO REMAND TO THE CIRCUIT COURT FOR MONTGOMERY COUNTY FOR RESENTENCING CONSISTENT WITH THIS OPINION. COSTS TO BE PAID BY MONTGOMERY COUNTY, MARYLAND.