20 A.3d 801

**Eugene Edward GARDNER**

v.

**STATE of Maryland.**

**No. 11, Sept. Term, 2010.**

Court of Appeals of Maryland.

May 24, 2011.

2

4

Amy E. Brennan, Asst. Public Defender (Paul B. DeWolfe, Public Defender, Baltimore, MD), on brief, for petitioner.

Susannah E. Prucka, Asst. Atty. Gen. (Douglas F. Gansler, Atty. Gen. of Maryland, Baltimore, MD), on brief, for respondent.

Argued before BELL, C.J., HARRELL, BATTAGLIA, GREENE, MURPHY, ADKINS and BARBERA, JJ.

BARBERA, J.

This case requires us to construe Maryland Code (1988, 2006 Repl.Vol.), § 12–702(b) of the Courts and Judicial Proceedings Article ("C.J."). That provision prohibits a court from imposing, following an appeal and remand for a new trial or resentencing, "a sentence more severe than the sentence previously imposed for the offense." [1] In the ordinary case the "sentence previously imposed" is the sentence imposed by the judge who presided over the original trial or guilty plea. The wrinkle presented by the case at bar is this: What is the "sentence previously imposed" when that judge's sentence is increased by a three-judge sentence review panel? For the reasons that follow, we hold that, in that instance, the sentence imposed by the three-judge panel is the "sentence previously imposed," for purposes of § 12–702(b).

I.

The issue we here address has its genesis in the 2005 trial of Petitioner Eugene Gardner in the Circuit Court for Baltimore County. At that trial, Petitioner was found guilty of armed robbery and use of a handgun in the commission of a felony. The sentencing judge imposed concurrent sentences of 25 years' imprisonment without the possibility of parole for

---

1. C.J. § 12–702(b) provides:

> (b) Remand for sentence or new trial; limitations on increases in sentences.—If an appellate court remands a criminal case to a lower court in order that the lower court may pronounce the proper judgment or sentence, or conduct a new trial, and if there is a conviction following this new trial, the lower court may impose any sentence authorized by law to be imposed as punishment for the offense. However, it may not impose a sentence more severe than the sentence previously imposed for the offense unless:
> (1) The reasons for the increased sentence affirmatively appear;
> (2) The reasons are based upon additional objective information concerning identifiable conduct on the part of the defendant; and
> (3) The factual data upon which the increased sentence is based appears as part of the record.
> Unless otherwise noted, all subsequent statutory citations will be to the Courts and Judicial Proceedings Article of the Maryland Code (1988, 2006 Repl.Vol.).

armed robbery, and 5 years without the possibility of parole for the handgun violation, for a total sentence of 25 years' incarceration. Petitioner, as he is entitled to do, noted an appeal from the judgments of conviction and sought review of the sentence by a three-judge panel, pursuant to Maryland Code (2002, 2006 Repl.Vol.), §§ 8–102, 8–105 of the Criminal Procedure Article ("C.P.").[2] While the appeal was pending, the review panel heard Petitioner's case.[3] The panel was unanimous in its decision to increase the sentence originally imposed, concluding that Petitioner "was a serious danger to the public and that it would be appropriate to modify his sentence." The panel did not change the 25–year, no-parole sentence for armed robbery; the panel, though, increased the sentence on the handgun conviction from 5 to 20 years' incarceration, no part of which was suspended and the first 5

---

**2.** C.P. § 8–102 provides, in relevant part:

(a) *Persons entitled to review.*—Except as provided in subsection (b) of this section, a person convicted of a crime by a circuit court and sentenced to serve a sentence that exceeds 2 years in a correctional facility is entitled to a single sentence review by a review panel. C.P. § 8–105 provides, in relevant part:

(c) *Powers and duties.*—(1) A review panel shall consider each application for review of a sentence.

(2) A review panel may require the Division of Parole and Probation to make investigations, reports, and recommendations.

(3) A review panel:

(i) with or without a hearing, may decide that the sentence under review should remain unchanged; or

(ii) after a hearing, may order a different sentence to be imposed or served, including:

1. an increased sentence;
2. subject to § 8–107(c) of this subtitle, a decreased sentence;
3. a suspended sentence to be served wholly or partly; or
4. a sentence to be suspended with or without probation.

**3.** The State filed a Motion to Correct the Record, dated August 10, 2010, asking us to add to the record in this case the transcript of the November 21, 2005, hearing before the three-judge panel. The State asserts: "The transcript is needed to provide the Court with a complete record for its consideration of the issue presented on appeal." We disagree. What is relevant to our inquiry is that the panel increased Petitioner's sentence to 45 years, which is undisputed, not what was said at the hearing. We therefore deny the State's Motion to Correct the Record.

years of which was to be served without parole. The panel directed the sentences to be served consecutively, resulting in an increase in the total sentence from 25 years to 45 years of executed time, followed by five years' probation.

Thereafter, the Court of Special Appeals reversed the judgments of conviction—the grounds for which are irrelevant to our inquiry here—and remanded the case to the Circuit Court for a new trial. Petitioner elected a bench trial, at which the judge found him guilty of the same offenses as before—armed robbery and the handgun offense. The judge then heard from the parties concerning sentencing. Petitioner argued for reimposition of the 25–year sentence that he received from the judge at the conclusion of the first trial. The State argued that the 45–year sentence of the three-judge panel should be followed. The court rejected both suggestions and sentenced Petitioner to a total of 40 years of executed time: 25 years, without parole, for armed robbery and 20 years with all but 15 years suspended, also without parole, for the handgun offense, to run consecutively.

On appeal to the Court of Special Appeals, Petitioner argued that the sentence violates the general prohibition in § 12–702(b) of an increased sentence following remand. Petitioner asserted that the statutory requirement that the sentence imposed on remand be no greater than the "sentence previously imposed" is ambiguous when applied to his case. He further argued that the ambiguity must be resolved in his favor by capping the new sentence at 25 years' imprisonment—the sentence imposed by the original sentencing judge.

The Court of Special Appeals disagreed. That court held that, as applied to Petitioner's case, "the sentence previously imposed" refers to the 45–year sentence imposed by the three-judge sentence review panel. Consequently, the 40–year sentence imposed by the court following re-trial does not violate § 12–702(b).

We granted Petitioner's request to consider the following question:

8

Where retrial and conviction follow a successful appeal, and Cts. & Jud. Proc. Art. § 12–702(b) prohibits a court from imposing a sentence more severe than the sentence previously imposed except in certain circumstances, is the trial court bound by the original trial judge's sentence or a subsequent sentence imposed by a three-judge panel?

## II.

Petitioner argues, as he did before the Court of Special Appeals, that the "sentence previously imposed" in § 12–702(b) is ambiguous when, as in the present case, a three-judge panel has increased the sentence imposed by the original trial judge. He argues: "The plain language of § 12–702(b) does not tell us *which* 'sentence previously imposed' is *the* 'sentence previously imposed' for purposes of applying the rule that a sentence cannot be increased after a successful appeal. . . ." The resulting ambiguity, Petitioner continues, dictates application of the rule of lenity, which requires that the lesser of the two previous sentences control for purposes of re-sentencing.

The State, not surprisingly, has a very different view. The State argues that there is no such ambiguity in § 12–702(b), because the sentence imposed by the three-judge panel supplanted the sentence imposed by the original sentencing judge, thereby becoming the operative "sentence previously imposed" for purposes of capping any new sentence, following appeal and remand.

Resolution of the issue involves the often-cited rules of statutory interpretation, which we recently summarized:

The cardinal rule of statutory interpretation is to ascertain and effectuate the real and actual intent of the Legislature. A court's primary goal in interpreting statutory language is to discern the legislative purpose, the ends to be accomplished, or the evils to be remedied by the statutory provision under scrutiny.

To ascertain the intent of the General Assembly, we begin with the normal, plain meaning of the statute. If the

language of the statute is unambiguous and clearly consistent with the statute's apparent purpose, our inquiry as to the legislative intent ends ordinarily and we apply the statute as written without resort to other rules of construction. We neither add nor delete language so as to reflect an intent not evidenced in the plain and unambiguous language of the statute, and we do not construe a statute with forced or subtle interpretations that limit or extend its application.

We, however, do not read statutory language in a vacuum, nor do we confine strictly our interpretation of a statute's plain language to the isolated section alone. Rather, the plain language must be viewed within the context of the statutory scheme to which it belongs, considering the purpose, aim, or policy of the Legislature in enacting the statute. We presume that the Legislature intends its enactments to operate together as a consistent and harmonious body of law, and, thus, we seek to reconcile and harmonize the parts of a statute, to the extent possible consistent with the statute's object and scope. Where the words of a statute are ambiguous and subject to more than one reasonable interpretation, or where the words are clear and unambiguous when viewed in isolation, but become ambiguous when read as part of a larger statutory scheme, a court must resolve the ambiguity by searching for legislative intent in other indicia, including the history of the legislation or other relevant sources intrinsic and extrinsic to the legislative process. In resolving ambiguities, a court considers the structure of the statute, how it relates to other laws, its general purpose and relative rationality and legal effect of various competing constructions.

In every case, the statute must be given a reasonable interpretation, not one that is absurd, illogical or incompatible with common sense.

*State v. Johnson*, 415 Md. 413, 421–22, 2 A.3d 368, 373 (2010) (internal quotation marks and citations omitted).

We begin the task of ascertaining the General Assembly's intent in enacting § 12–702(b), by resort to the plain

language of that provision. Petitioner contends that, in light of its context, the Legislature "most probably intended" the phrase "the sentence previously imposed" to mean the original sentence imposed by the circuit court. That contention is contrary to the original text of the statute. As enacted in 1966, § 12–702(b) contained the language at issue in the case before us (i.e., on remand, a court "may not impose a sentence more severe than the sentence previously imposed"), and then, as now, subsection (b) included an exception to the general rule prohibiting increased sentences on remand. Prior to July 1, 1988, though, subsection (b)(2) stated that one requirement of the exception was that "[t]he reasons [for the increased sentence] are based upon objective information concerning identifiable conduct on the part of the defendant occurring after *the original sentence* was imposed." (Emphasis added.) House Bill 1139, effective July 1, 1988, deleted from subsection (b)(2) the phrase "occurring after the original sentence was imposed." *See* 1988 Md. Laws Ch. 722. The Senate Judicial Proceedings Committee's Floor Report regarding H.B. 1139 reveals that the purpose of that deletion was

> to correct situations in which the first sentence was given while the judge was unaware of information that would have resulted in a greater sentence had the judge been aware of the information. The example was given of a defendant giving false information that the defendant was a first offender while in reality the defendant had prior convictions in another jurisdiction.

We conclude from this that the deletion of subsection (b)(2)'s reference to "the original sentence" was not intended to change the meaning of the phrase, "the sentence previously imposed."

That becomes important when the language of § 12–702(b) is considered "as a whole[.]" *Briggs v. State,* 413 Md. 265, 275–76, 992 A.2d 433, 439 (2010). The language in its entirety, considered in light of its original text, the amendment, and the reason for it, reveals that "the sentence previously imposed" cannot mean merely "the original sentence." We know this because § 12–702(b) originally contained both phrases, and we

presume that the Legislature intentionally used different phrases to carry different meanings. *See Chow v. State,* 393 Md. 431, 448, 903 A.2d 388, 398 (2006) ("Words can have multiple meanings and often do.... In order to interpret a word's specific meaning in a particular statute we look to the context in which the word is used."); *see also Keene Corp. v. United States,* 508 U.S. 200, 208, 113 S.Ct. 2035, 124 L.Ed.2d 118 (1993) ("[W]here Congress includes particular language in one section of a statute but omits it in another ..., it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." (citation omitted)). Because, as described above, H.B. 1139 did not alter the original meaning of the phrase "the sentence previously imposed," we reject Petitioner's argument that the phrase, as it currently exists in § 12–702(b), is coterminous with the "original sentence." Stated differently, had the Legislature intended the "previous" sentence to mean the "original" sentence, it would have employed only the latter term. Thus viewed, § 12–702(b) is not ambiguous.

The result would be no different even if we were to grant Petitioner his argument that the term "previous" is susceptible of application to either of the two previously imposed sentences, and is thus ambiguous as applied to the present situation. When the language of the statute is subject to more than one interpretation, and thereby rendered ambiguous, we "must resolve the ambiguity by searching for legislative intent in other indicia, including the history of the legislation or other relevant sources intrinsic and extrinsic to the legislative process." *Johnson,* 415 Md. at 422, 2 A.3d at 373. We may consider "the structure of the statute, how it relates to other laws, its general purpose and relative rationality and legal effect of various competing constructions." *Id.,* 2 A.3d at 373. And, of course, we may not give the statute an interpretation that is absurd; rather, the construction must be reasonable and comport with common sense. *Id.,* 2 A.3d at 373.

When § 12–702(b) is considered in conjunction with the sentence review panel statute, C.P. §§ 8–102 et seq., any facial ambiguity in § 12–702(b) dissolves and the statute's

meaning becomes clear. C.P. § 8–106(a) permits a review panel to "increase, modify, or reduce a sentence. . . ." We described the genesis of this statute in *Collins v. State*, 326 Md. 423, 424–25, 605 A.2d 130, 131 (1992). We stated that the statute grew out of the 1965 Report of the Governor's Commission to Study Sentencing in Criminal Cases. We noted the following conclusion of the Commission:

> [I]n many instances the sentences imposed by circuit judges throughout the state for the same crimes committed under the same circumstances by persons with similar backgrounds were alarmingly disparate. The Commission criticized that injustice, recognized the problems that it created, and emphasized the need for reasonable uniformity in sentencing practices. Accordingly, the Commission recommended the adoption of a system, patterned upon statutes then in effect in Massachusetts and Connecticut which would provide for the review of criminal sentences by a panel of trial judges who were the peers of the sentencing judge.

*Id.* at 424, 605 A.2d at 131 (internal citations omitted). We added: "[T]he proposed statute drafted by the Commission and submitted as part of its report was adopted by the General Assembly without substantial modification as ch. 288 of the Acts of 1966." *Id.* at 424–25, 605 A.2d at 131. In short, the sentence review panel is authorized to alter sentences by increasing or decreasing them, as appropriate, to remedy gross sentencing disparities. *State v. Ward*, 31 Md.App. 68, 69, 354 A.2d 834, 835 (1976).

The Court of Special Appeals' decision in *Rendelman v. State*, 73 Md.App. 329, 533 A.2d 1339 (1987) also informs our analysis. In that case, Judge Wilner, a retired Judge of this Court and formerly Chief Judge of the Court of Special Appeals, discussed the effect of a three-judge panel's decision to increase a sentence, in order to determine whether a defendant whose sentence has been increased by a three-judge panel has the right to appeal that decision.[4] In holding that a

---

4. At the time *Rendelman* was decided, the panel review statute was codified at Maryland Code, Art. 27, § 645A(a). In 2001, the General

defendant has such a right of appeal, the *Rendelman* court noted, *id.* at 335, 533 A.2d at 1342, that, when the panel increases the sentence, "the focus is necessarily and quite properly on what occurred before the panel," rather than on what occurred before the original sentencing judge:

> [The panel's] sentence, not that initially imposed by the trial judge, is what must pass muster, because that is the effective sentence in the case. *That* is the sentence that must be within Constitutional and statutory limits; it is that proceeding that must comport with required procedure; it is the *panel* then that must be free of "ill will, prejudice or other impermissible considerations."

*Id.*, 533 A.2d at 1342 (quoting *Teasley v. State*, 298 Md. 364, 370, 470 A.2d 337, 337 (1984)). Moreover,

> [t]he [sentence review panel] statute merely provides a procedure for three judges, acting for the court [where the case was tried and sentence imposed], to review the sentence imposed by a single judge, acting for the court. The decision of the panel, to the extent that it changes the sentence, is the decision of the court; indeed, by finally concluding the rights of the parties at that level, it is the final judgment of the court.

*Id.* at 336, 533 A.2d at 1342.

Although the issue addressed in *Rendelman* differs from the statutory interpretation issue we face here, the Court of Special Appeals' analysis of the effect of a panel's increase of the original judge's sentence applies equally to the present context.

Further assistance in construing C.P. § 8–106 is supplied elsewhere in the sentencing review subtitle. *See* C.P. § 8–107(d) (describing the sentence imposed by the panel as the sentence "substituted" for the original sentence, in stating: "A review panel shall consider time served on the sentence under review to be time served on any sentence that is *substituted*."

Assembly moved the statute to its present location in the Criminal Procedure Article.

(Emphasis added.)). The General Assembly's choice of the term "substituted," in discussing the effect on the original sentence of a sentence altered by a three-judge panel, reflects the legislative intent that the sentence, as altered by the review panel, supplants the original sentence.

Maryland Rule 4–344(f), which this Court promulgated at the direction of the General Assembly to implement the panel review statute, *see* C.P. § 8–109, provides additional support for this notion. Rule 4–344(f) states in pertinent part: "If the sentence is to be increased, the defendant shall be brought before the panel and *resentenced* pursuant to Rule 4–342 [prescribing sentencing procedures in non-capital cases]." (Emphasis added.) Obviously, such resentencing upon increase by the panel is necessary only if that sentence supplants the original sentence.

 In short, when a sentence review panel alters the original sentence by increasing (or for that matter, decreasing) it, the panel's sentence becomes the "sentence of the court." *Rendelman,* 73 Md.App. at 336, 533 A.2d at 1342. To use the language of C.P. § 8–107, the original sentence is "substituted" with the sentence imposed by the sentence review panel. The original sentence is erased, having been superseded, and the panel's sentence becomes, for purposes of § 12–702(b), the "sentence previously imposed." This construction of § 12–702(b) gives full effect to the purposes of the sentence-review panel statute, thereby furthering the rule of construction that we presume the General Assembly "intends its enactments to operate together as a consistent and harmonious body of law." *Johnson,* 415 Md. at 421, 2 A.3d at 373.

As important, § 12–702(b), thus construed, gives full effect to the purpose underlying the General Assembly's enactment of that provision. The General Assembly enacted § 12–702(b) as a response to the United States Supreme Court's ruling in *North Carolina v. Pearce,* 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969). *Briggs v. State,* 289 Md. 23, 27–28, 421 A.2d 1369, 1372 (1980). Indeed, the "operative language of [§ 12–702(b)] derives from" *Pearce. Id.* at 27, 421 A.2d at

1372; *see also Jones v. State*, 307 Md. 449, 454, 514 A.2d 1219, 1222 (1986) (Section 12–702(b) "adopted not only the *Pearce* doctrine but also significant portions of the *Pearce* language as the statutory policy of Maryland."). *Pearce* held that, "whenever a judge imposes a more severe sentence upon a defendant after a new trial, the reasons for his doing so must affirmatively appear. Those reasons must be based upon objective information concerning identifiable conduct on the part of the defendant occurring after the time of the original sentencing proceeding." 395 U.S. at 726, 89 S.Ct. 2072. That rule served a prophylactic purpose because, the Supreme Court concluded in *Pearce*, due process "requires that vindictiveness against a defendant for having successfully attacked his first conviction must play no part in the sentence he receives after a new trial."[5] *Id.* at 725, 89 S.Ct. 2072.

The concern for resentencing vindictiveness that undergirds § 12–702(b) does not arise in the panel review context. Petitioner's case explains why it does not. Had Petitioner not been successful on appeal, his sentence would have remained 45 years, as determined by the three-judge panel. That panel made its decision on November 21, 2005, before Petitioner received a favorable decision from the Court of Special Appeals on May 30, 2007. It follows that "vindictiveness" for Petitioner's "having successfully attacked his first conviction" could have played no part in the panel's decision. *Pearce*, 395 U.S. at 725, 89 S.Ct. 2072. With that in mind, the trial court on remand could not have penalized Petitioner with a "heavier sentence," *id.* at 723, 89 S.Ct. 2072, unless it imposed a sentence greater than the 45 year-sentence Petitioner faced, had his appeal failed. Furthermore, the threat of receiving a

---

**5.** The Supreme Court has retreated from the *Pearce* analysis. *See Alabama v. Smith*, 490 U.S. 794, 109 S.Ct. 2201, 104 L.Ed.2d 865 (1989); *Texas v. McCullough*, 475 U.S. 134, 106 S.Ct. 976, 89 L.Ed.2d 104 (1986); *Wasman v. United States*, 468 U.S. 559, 104 S.Ct. 3217, 82 L.Ed.2d 424 (1984). We have made clear, though, that the General Assembly's codification of the *Pearce* doctrine is not influenced by the Supreme Court's subsequent determination "that due process does not now forbid what it seemed to prohibit in *Pearce*." *Jones*, 307 Md. at 455, 514 A.2d at 1222.

sentence of up to 45 years following a new trial would not "chill the exercise" of Petitioner's right to appeal his conviction because that is the sentence he faced if his appeal had not succeeded. *See Briggs*, 289 Md. at 28, 421 A.2d at 1372 (explaining that, "since the fear of such retaliation may chill the exercise of any existing right to appeal, *Pearce* makes clear that due process further dictates that the defendant be freed of any such trepidation" (citing *Pearce*, 395 U.S. at 725, 89 S.Ct. 2072)).

 Insofar as Petitioner only faced a 25-year sentence at the time he noted his appeal to the Court of Special Appeals, the subsequent increase of that sentence to 45 years was due to Petitioner's decision to seek review by the panel. Risk of the panel increasing the sentence accompanied that decision. The Maryland statutes and Rules of Procedure outline the processes of review both by a sentence review panel and by the Court of Special Appeals. That Petitioner pursued both avenues of relief with one favorable outcome and one unfavorable is of no consequence; Petitioner has cited no legal authority suggesting such outcomes are in any way incompatible or that one negates the other, and we know of none.

### III.

 Petitioner argues that the rule of lenity should be applied to find in his favor. We disagree. The rule of lenity instructs that courts "will not interpret a ... criminal statute so as to increase the penalty that it places on an individual when such an interpretation can be based on no more than a guess as to what [the legislature] intended." *White v. State*, 318 Md. 740, 744, 569 A.2d 1271, 1273 (1990) (quoting *Simpson v. United States*, 435 U.S. 6, 15, 98 S.Ct. 909, 55 L.Ed.2d 70 (1978)). We have said that, "like other canons of statutory construction, the rule of lenity is neither absolute nor exclusive. Other considerations may also be applicable in arriving at a principled decision." *White*, 318 Md. at 745–46, 569 A.2d at 1274. "[T]he touchstone of the rule of lenity is statutory ambiguity. Where [the legislature] has manifested its inten-

tion, we may not manufacture ambiguity in order to defeat that intent." *Bifulco v. United States,* 447 U.S. 381, 387, 100 S.Ct. 2247, 65 L.Ed.2d 205 (1980) (quotation marks omitted). The Supreme Court has further clarified that:

> [W]e have declined to deem a statute "ambiguous" for purposes of lenity merely because it was *possible* to articulate a construction more narrow than that urged by the Government. . . . Instead, we have always reserved lenity for those situations in which a reasonable doubt persists about a statute's intended scope even *after* resort to the language and structure, legislative history, and motivating policies of the statute.

*Moskal v. United States,* 498 U.S. 103, 108, 111 S.Ct. 461, 112 L.Ed.2d 449 (1990) (internal quotation marks and citation omitted); *see also Albernaz v. United States,* 450 U.S. 333, 342, 101 S.Ct. 1137, 67 L.Ed.2d 275 (1981) ("The rule comes into operation at the end of the process of construing what Congress has expressed, not at the beginning as an overriding consideration of being lenient to wrongdoers." (internal quotation marks and citation omitted)).

 Stated simply, the rule of lenity only informs our interpretation of a criminal statute when the standard tools of statutory interpretation fail to discern the intent of the Legislature. This is so because our "cardinal rule of statutory interpretation is to ascertain and effectuate the intent of the Legislature[,]" *Kushell v. Dept. of Nat. Resources,* 385 Md. 563, 576, 870 A.2d 186, 193 (2005), and the rule of lenity does not shed light on legislative intent. Rather, lenity provides a mechanism for resolving ambiguity when legislative intent cannot be determined to any degree of certainty. *See Randall Book Corp. v. State,* 316 Md. 315, 327, 558 A.2d 715, 721 (1989) (citing *Albernaz,* 450 U.S. at 342–43, 101 S.Ct. 1137); *see also Briggs,* 413 Md. at 286, 992 A.2d at 446 ("Ordinarily, the rule of lenity applies when the scales are evenly balanced after a court has weighed contradictory interpretations of a statute." (citing *Randall Book,* 316 Md. at 327, 558 A.2d at 721)). Because we have been able to ascertain the legislative purpose

18

behind § 12–702(b), the rule of lenity has no application in this case.

We conclude that § 12–702(b), as we have construed it, was not violated in this case. Therefore, Petitioner's 40–year sentence stands.

**JUDGMENT OF THE COURT OF SPECIAL APPEALS AFFIRMED; COSTS TO BE PAID BY PETITIONER.**