**STATUTORY CONSTRUCTION**

**VEHICLE LAWS – LEGISLATIVE HISTORY – STATUTE BARRING THE SOLICITATION OF A "RIDE, EMPLOYMENT, OR BUSINESS" FROM ROADWAY NOT INTENDED TO ENCOMPASS CHARITABLE SOLICITATION**

May 18, 2012

*The Honorable Anne R. Kaiser*
*Maryland Senate*

You asked for our opinion on whether the fire fighters' annual "Fill the Boot" campaign to raise money for the Muscular Dystrophy Association is prohibited by § 21-507(a) of the Transportation Article, which prohibits any person from "stand[ing] in a roadway to solicit a ride, employment, or business." Specifically, you have asked whether the General Assembly intended its use of the word "business" in § 21-507(a) to include charitable solicitations. After a thorough review of the legislative history of the provision, both before and after its enactment in 1970, we now conclude that the Legislature did not intend the term "business" to include charitable solicitations. In reaching this conclusion, we depart from the interpretation we adopted in a previous opinion, *see* 93 *Opinions of the Attorney General* 31, 35-36 (2008), but do so without disturbing its ultimate determination that the local ordinance at issue in the earlier opinion was preempted by State law. We also recognize that the interpretation we reach here raises First Amendment concerns that a reviewing court might choose to avoid with a broader reading of the word "business." However, in our view, interpreting § 21-507(a) to allow charitable solicitation within the roadway does not make the law clearly unconstitutional, although additional legislation may be advisable to ensure that charitable contributions, which would include panhandling, are solicited in a manner that is consistent with the public safety goals of the statute.

## I

## Background

The International Association of Fire Fighters ("IAFF") is one of the national sponsors of the Muscular Dystrophy Association ("MDA") and has since 1954 supported the MDA

through a variety of volunteer and fund-raising activities. Perhaps the most recognizable aspect of the IAFF's activities on behalf of the MDA is the annual Fill the Boot campaign, in which members of IAFF locals across the country invite the public at intersections, malls, and sporting events to fill a fire fighter's boot with donations for the MDA. Here in Maryland, local chapters of the IAFF have carried out the Fill the Boot campaign since at least 1986. In 2011, Fill the Boot campaigns helped fire fighters raise $27 million—the highest yearly contribution from an MDA sponsor.

The Fill the Boot campaign involves fire fighters (or the professional fundraisers they employ) standing on the median strip at busy intersections and soliciting contributions from motorists when stopped at red lights. If the car is close enough to the median strip, the fire fighter can extend the boot and collect the contribution without ever leaving the median strip. More typically, however, the fire fighter must step into the roadway to collect the contribution, particularly when the car is in a lane that is not immediately adjacent to the median strip. The entire fundraising process—from soliciting from the median strip to entering the roadway to collect the contribution—is carried out pursuant to safety manuals that instruct fundraisers to wear orange vests or reflective material on their clothing, initiate all collections from the roadside or the median strip, and never stop traffic or approach a moving vehicle.

*Section 21-507(a) of the Transportation Article*

Section 21-507(a) of the Transportation Article sets forth the restrictions on roadside solicitations that are the subject of this opinion: "Except for the occupant of a disabled vehicle who seeks the aid of another vehicle, a person may not stand in a roadway to solicit a ride, employment, or business from the occupant of any vehicle." Md. Code Ann., Transp. ("TR") § 21-507(a) (2011 Supp.). For purposes of § 21-507(a), the term "roadway" refers to the portion of a road designed for vehicular travel, while the term "highway" encompasses a wider area. *See* TR §§ 11-151.1, 11-127 (2009 Repl. Vol.).[1]   Additional subsections in § 21-507

---

[1]   Those definitions are as follows: "Highway" means:

(1)   The entire width between the boundary lines of any way or thoroughfare of which any part is used by the public for vehicular travel, whether or not the way or

(continued . . .)

regulate solicitations along the highways in particular counties. TR § 21-507(c)-(k) (2011 Supp.). Violation of § 21-507 is punishable as a misdemeanor and subject to a fine of not more than $500.[2]

This Office first addressed the scope of § 21-507 in a 2004 legislative advice letter, which concluded that the statute clearly prohibited standing in the roadway for the purpose of selling things, but that it was a "closer question" whether the solicitation of donations was similarly banned. *See* Letter of Assistant Attorney General Kathryn M. Rowe to Delegate David D. Rudolph (June 28, 2004) ("2004 advice letter"). The advice letter cited the public safety purpose of the statute, case law in which courts have treated the activities of nonprofit organizations under the rubric of "business," and the conclusion that, "[f]rom the standpoint of public safety, there is little or no difference between a person standing in the roadway to sell things and one standing in the roadway to solicit money." Reasoning that the term "business" could encompass a charitable transaction as well as a commercial transaction, the advice letter concluded that the reference to soliciting business should be "read broadly" in this context to include the solicitation of donations.

---

thoroughfare has been dedicated to the public and accepted by any proper authority; and

(2) For purposes of the application of State laws, the entire width between the boundary lines of any way or thoroughfare used for purposes of vehicular travel on any property owned, leased, or controlled by the United States government and located in the State.

TR § 11-127. "'Roadway' means that part of highway that is improved, designed, or ordinarily used for vehicular travel, other than the shoulder." TR § 11-151(a). In relevant part, these definitions are unchanged since their initial enactment in 1970. *Compare with* 1970 Md. Laws, ch. 534 at 1313 (§ 1-132), 1319 (§ 1-777).

[2] TR § 27-101(a), (b). The 2011 District Court of Maryland "Schedule of Pre-Set Fines and/or Penalty Deposits," used by law enforcement officers as a reference in issuing citations, lists the fine for violation of § 21-507(a) as $70 with no points. *See* http://www.courts.state.md.us/district/forms/criminal/dccr090.pdf (last visited May 11, 2012).

Subsequently, in 2008, we were asked to opine on the constitutionality of Gaithersburg's anti-solicitation ordinance. The opinion concluded that the provisions of the ordinance addressing conduct in the roadway were preempted by State law. In the course of analyzing that issue, however, the opinion noted with respect to § 21-507(a) that "[t]his Office has taken the position that the ban on business solicitation in this statute should be interpreted broadly to encompass the solicitation of donations, given that its purpose is to promote public safety." 93 *Opinions of the Attorney General* 31, 35-36 (2008) (citing with approval the 2004 advice letter). It is that subsidiary conclusion that we now revisit.

## II

## Analysis

Familiar principles guide the interpretation of statutory provisions. The Court of Appeals has instructed that "[t]he cardinal rule of statutory interpretation is to ascertain and effectuate the real and actual intent of the Legislature." *Gardner v. State*, 420 Md. 1, 8 (2011) (internal quotation marks omitted).

> To ascertain the intent of the General Assembly, we begin with the normal, plain meaning of the statute. If the language of the statute is unambiguous and clearly consistent with the statute's apparent purpose, our inquiry as to the legislative intent ends ordinarily and we apply the statute as written without resort to other rules of construction. We neither add nor delete language so as to reflect an intent not evidenced in the plain and unambiguous language of the statute, and we do not construe a statute with forced or subtle interpretations that limit or extend its application.

*Id.* at 8-9. Other principles of statutory construction caution against "read[ing] statutory language in a vacuum" or confining an interpretation of a statute's plain language "to the isolated section alone." *Id.* at 9. Even when the words of a statute "are clear and unambiguous when viewed in isolation," resort to legislative history is warranted if those words "become ambiguous when read as part of a larger statutory scheme. . . ." *Id.* At the same time, it

is important not to "disregard the natural meaning of the statutory words" or "rewrite statutes to reflect [one's own] ideas of public policy." *BAA, PLC v. Acacia Mut. Life Ins. Co.*, 400 Md. 136, 158 (2007).

## A. Ordinary Meaning of "Business"

The plain language of § 21-507(a) limits its reach to roadway solicitations for "a ride, employment, or business." The term "business" is not defined by statute and has a number of meanings, ranging from "any purposeful activity" (*e.g.*, the business of learning) to connoting personal rights (*e.g.*, "You had no business hitting him."). Webster's Ninth New Collegiate Dictionary (Merriam Webster, 1989). The more common meaning of the term "business," however, is "commercial or mercantile activity." *Id.* That, too, is the common meaning of the term "business" in legal parlance. *See Black's Law Dictionary* (9th ed. 2009) (listing first definition of "business" as "[a] commercial enterprise carried on for profit; a particular occupation or employment habitually engaged in for livelihood or gain"). Because neither the fire fighters nor the Muscular Dystrophy Association is a "business" in the sense of engaging in commercial activity for profit or gain, the plain language of § 21-507(a) would not appear to reach the fire fighters' annual Fill the Boot campaign.

## B. Legislative History

Although the term "business" does not ordinarily include "charitable solicitation," there is at least some ambiguity as to its precise meaning. To that extent, it is appropriate to consider the legislative history of § 21-507 and other interpretive aids to ascertain legislative intent. For the reasons explained below, we find that these non-textual indicia of legislative intent also indicate that the General Assembly did not mean to prohibit charitable solicitation with its use of the term "business" in § 21-507(a).

### The Warnken Committee and the Uniform Vehicle Code

The circumstances surrounding the adoption of § 21-507 indicate that the General Assembly intended to prohibit solicitation of business, but not to bar all solicitation of contributions. The predecessor of § 21-507 was enacted following a 1968 report to the Legislature by the Committee to Study Revision of the Motor Vehicle Laws, sometimes referred to as the "Warnken Committee" after its chairman, Judge S. Ralph Warnken. The Committee was convened to compare existing Maryland law to the laws of other

states and to the provisions of the Uniform Vehicle Code ("UVC")[3] and recommend revisions to modernize Maryland's vehicle laws. The Committee carried out its deliberations over an approximately four-year period, culminating in its "Proposed Revision of the Motor Vehicle Laws of the State of Maryland" issued on September 1, 1968 ("Warnken Report"). The Legislative Council considered the Warnken Report in 1969, and the Judiciary Committee of that body appointed a special committee which "studied the matter and recommended adoption of the report of the Warnken [C]ommittee." *Covington v. Gernert*, 280 Md. 322, 324-25 (1977). The General Assembly accepted that recommendation and adopted the new motor vehicle code in 1970. *See generally* 1970 Md. Laws, ch. 534.

At the time the Warnken Committee began its deliberations, existing Maryland law appears to have prohibited only the placement of "any structure, building or vehicle on any State highway right-of-way for the purpose of selling or displaying any produce or merchandise in such a manner which shall constitute a traffic hazard. . . ." Md. Ann. Code Art. 66½, § 248 (1967 Repl. Vol.). The Uniform Vehicle Code, by contrast, prohibited an individual from standing in a roadway to solicit "a ride, employment, or business from the occupant of any vehicle."[4]

---

[3] Unlike most other "uniform" laws, the Uniform Vehicle Code is not a product of either the National Conference of Commissioners on Uniform State Laws or the American Law Institute. Rather, it was developed, and is still updated from time to time, by the National Committee on Uniform Traffic Laws and Ordinances ("NCUTLO"), a private, nonprofit organization which is located in Alexandria, Virginia, and has a website at www.ncutlo.org. The Uniform Vehicle Code has been adopted in full or in part by most states.

[4] The complete text of § 11-507 of the Uniform Vehicle Code in place at the time provided as follows:

(a) No person shall stand in a roadway to solicit a ride, employment or business from the occupant of any vehicle.

(b) No person shall stand on or in proximity to a street or highway for the purpose of soliciting the watching or guarding of any vehicle while parked or about to be parked on a street or highway.

NCUTLO, *Uniform Vehicle Code: Rules of the Road* at 332 (1967); *see* Warnken Report at 147. A provision prohibiting a person from standing

(continued . . .)

Although members of the Warnken Committee "considered and discussed at great length the respective merits of [existing] Maryland [law] versus UVC provisions," Warnken Report at iv, the new motor vehicle code that the Warnken Committee proposed followed "very closely" the Uniform Vehicle Code. *Id.* at iii; *State v. Moon*, 291 Md. 463, 486 (1981). With respect to roadside solicitation, the language the Committee proposed, and the General Assembly adopted, was substantively identical to the UVC provision and is identical to the current version of § 21-507(a). *See* 1970 Md. Laws, ch. 534 at 1475-76 (§ 11-507).

Even as the Warnken Committee was carrying out its review, however, the anti-solicitation provisions of the Uniform Vehicle Code were themselves under revision. The result of that revision was to split the roadside solicitation provisions of what was § 11-507 into two subsections. *See* NCUTLO, *Uniform Vehicle Code: Rules of the Road* at 120 (1970 Supp.). The first subsection prohibited the solicitation of a ride by a person standing in the roadway—*i.e.*, the traveled portion of the highway. *Id.* The second subsection was broadened to apply to the entire highway and barred solicitation of "employment, business, or *contributions*" from drivers. *Id.* (emphasis added). The second subsection of the uniform code thus applied to a broader geographical area, and added the word "contributions" to the terms "employment" and "business" that had appeared in the model law for 16 years.[5]

---

in a roadway to solicit a ride had been included within the Uniform Vehicle Code since 1930, with the words "employment" and "business" added in 1952. NCUTLO, *Uniform Vehicle Code: Rules of the Road* at 333.

[5] The complete text of § 11-507 of the revised version of the Uniform Vehicle Code that was adopted in 1968 provided as follows:

(a)   No person shall stand in a roadway for the purpose of soliciting a ride.

(b)   No person shall stand on a highway for the purpose of soliciting employment, business, or contributions from the occupant of any vehicle.

(c)   No person shall stand on or in proximity to a street or highway for the purpose of soliciting the watching or guarding of any vehicle while parked or about to be parked on a street or highway.

NCUTLO, *Traffic Laws Annotated* 182 (1979).

Although no legislative bill files are available for sessions prior to 1975, the Warnken Committee's reports indicate that it was aware that the Uniform Vehicle Code was "undergoing substantial modification" as the Committee was preparing its report and recommendation to the General Assembly. Remarks of S. Ralph Warnken before the Legis. Council (Nov. 16, 1967) *reproduced in* Rep. to the Gen. Assembly of 1968, vol. 1, at 342. While the Committee reports do not specifically mention the changes to the roadside solicitation provisions of the uniform code, they do indicate that Committee members "had to evaluate the as yet tentative proposals for amendment of that Code." *Id.* In the end, however, neither the committee, in making its recommendations, nor the General Assembly, in enacting legislation based on those recommendations, included the term "contributions" in the roadside solicitation provision that, after 1968, appeared in the Uniform Vehicle Code.

In our view, this history suggests that the legislative decision to adopt the phrase "ride, employment, or business" from the pre-1968 Uniform Vehicle Code, and not the phrase "employment, business, or contributions" that appeared after 1968, was deliberate. Its various reports demonstrate that the Warnken Committee was aware of the proposed modifications to the Uniform Vehicle Code, evaluated those modifications for adoption in Maryland, and chose not to recommend them to the Legislature.

> *Legislative Action Prior to the Attorney General's 2004 and 2008 Interpretation*

Legislative action and inaction since the enactment of § 21-507 further supports the conclusion that the General Assembly did not understand charitable solicitation to be prohibited by the term "business" in § 21-507(a). It is significant, for example, that the anti-solicitation provision has not been amended subsequently to conform to the 1968 changes in the Uniform Vehicle Code. In this respect, Maryland is different from the many states that, based on our limited review, have adopted anti-solicitation provisions that are identical or functionally similar to the anti-solicitation provision in the post-1968 version of the Uniform Vehicle Code. *See, e.g.*, Op. S.C. Att'y Gen., 1979 S.C. AG LEXIS 155 (Oct. 8, 1979) (discussing state law prohibition on "soliciting employment, business, or contributions" from the highway). Indeed, NCUTLO, in its 1979 *Traffic Laws Annotated*, identified Maryland as one of only 12 states that, "[l]ike the [Uniform] Code prior to 1968," prohibit the solicitation of "employment or business," but not

charitable contributions. NCUTLO, *Traffic Laws Annotated* at 183 (1979).

The first time the Legislature revisited the issue of roadside solicitation came in 2001, when it amended §§ 21-507 and 21-313 to authorize the Charles County Commissioners to prohibit a person from soliciting "money, donations of any kind, employment, business, or a ride from the occupant of any vehicle." 2001 Md. Laws, ch. 585. Three aspects of this legislation are noteworthy. First, an amendment to § 21-507(a) to prohibit the solicitation of "donations of any kind" would have been largely surplusage if § 21-507(a) had already prohibited the solicitation of donations by its use of the term "business." Second, the legislative history indicates that the General Assembly was aware of the discrepancy between the proposed county-specific provisions and § 21-507(a). The Fiscal Note for the 2001 bill states that State law at that time did "not specifically prohibit soliciting donations or money from a controlled access highway or from a median divider or intersection." Revised Fiscal Note for S.B. 225, at 2 (2001).

Finally, the evolution of the bill's language as it moved through the legislative process suggests strongly that the Legislature considered, but decided against, expanding the prohibition of § 21-507(a) to encompass charitable solicitation. When that bill was first introduced, the language proposed to amend § 21-507(a) in the following way:

> Except for the occupant of a disabled vehicle who seeks the aid of another vehicle, a person may not stand in a roadway, MEDIAN DIVIDER, OR INTERSECTION to solicit a ride, employment, [or] business, MONEY, OR DONATIONS OF ANY KIND from the occupant of any vehicle.

S.B. 225, 2001 Gen. Assembly (first reader) (proposed amendments capitalized). In other words, the bill initially sought to broaden the statewide prohibition to include donations and extend the prohibited conduct beyond the roadway. As the bill moved through the legislative process, it was amended to make the broadened prohibition applicable only in Charles County and left § 21-507(a) unchanged. The General Assembly, thus, was aware that § 21-507(a) did not specifically prohibit charitable solicitations, considered amending the provision to include such a prohibition, but in the end chose not to do so.

In 2004, the General Assembly returned to § 21-507 to authorize Anne Arundel County to establish a licensing program for individuals and qualified charitable organizations—including fire companies—who wish to "solicit money or donations from the occupant of a vehicle by standing in a roadway, median divider, or intersection." 2004 Md. Laws, ch. 156. The legislative history surrounding Ch. 156 is consistent with that surrounding the 2001 legislation and also supports the conclusion that the Legislature did not believe that the term "business" included charitable solicitation. Specifically, the Fiscal Note draws a distinction between the then-current State law, which prohibited solicitation for "a ride, employment, or business," and the law applicable within Charles, Harford, and Washington Counties, which by then prohibited a person from standing "in a roadway, median divider, or intersection to solicit money or donations of any kind."[6] Revised Fiscal and Policy Note for H.B. 187, at 3 (2004). More importantly, the Fiscal Note makes clear that "[n]othing in the bill should be construed as prohibiting individuals or organizations from roadway solicitation if the county council does not enact an ordinance to create a licensing program." *Id.* This caveat provides further evidence that charitable solicitation was not believed to be prohibited under § 21-507(a) as a matter of State law, for if it were, such solicitation would have remained prohibited as a matter of State law whether or not the County enacted a licensing program.

> *Legislative Action Subsequent to the Attorney General's Advice*

The history of amendments to § 21-507(a) occurring *after* this Office made known its earlier interpretation—both in the 2004 advice letter and in the 2008 opinion—do not compel the conclusion that the Legislature has adopted or ratified that interpretation. It is, of course, relevant that the General Assembly has not statutorily superseded the interpretation of § 21-507(a) provided by this Office in the 2004 advice letter and echoed in the 2008 opinion. "The Legislature is presumed to be aware of the

---

[6] As discussed above in text, Charles County was the first county in which this broader prohibition on the roadside solicitation of "donations of any kind" was prohibited, *see* 2001 Md. Laws, ch. 585. Harford County and Washington County were added in 2003. *See* 2003 Md. Laws, chs. 219 (Harford), 463 (Washington). Carroll County was subsequently added in 2005. 2005 Md. Laws, ch. 93.

Attorney General's statutory interpretation and, in the absence of enacting any change to the statutory language, to acquiesce in the Attorney General's construction." *Potomac Valley Orthopaedic Assocs. v. State Board of Physicians*, 417 Md. 622, 637 (2011) (internal quotation marks omitted). Here, however, the Legislature has amended § 21-507 on a number of occasions after 2004 to enact county-specific roadside solicitation provisions that expressly *do* apply to charitable donations without also amending subsection (a) to modify the statewide ban in a similar manner.

Since 2004, the Legislature on several occasions has amended § 21-507 to enact county-specific provisions—some that extend the solicitation ban beyond the roadway,[7] others that relax the ban by adopting permit programs that impose conditions on solicitors[8]—and in each instance has expressly included "donations" in the scope of regulated roadway solicitations. Yet § 21-507(a) has never been amended to include donations. And in each of the instances in which a county-specific bill was enacted, the Department of Legislative Services noted that the bill, if passed, "may affect some nonprofit organizations (*e.g.*, local fire departments, advocacy groups, charities) . . . that conduct fund-raising activities from median dividers." Fiscal and Policy Note for H.B. 1429, at 2 (2005); *see also* Revised Fiscal and Policy Note for H.B. 392, at 3 (2009). Again, if State law had already prohibited the roadside solicitation of donations by fire fighters and other groups under the term "business," the county-specific legislation making that prohibition express would have had little or no effect. The history of legislative action both before and after 2004 simply does not support the proposition that the General Assembly intended its use of the word "business" in § 21-507(a) to encompass charitable solicitation.

---

[7] *See* 2009 Md. Laws, ch. 695 (Howard County); 2008 Md. Laws, ch. 436 (Prince George's County); 2007 Md. Laws, ch. 537 (Anne Arundel County); 2006 Md. Laws, ch. 473 (broadening prohibition in Montgomery County to ban minors from standing on median divider or in intersection, as well as in roadway, and authorizing Anne Arundel to do the same); 2005 Md. Laws, ch. 93 (Carroll County).

[8] *See* 2011 Md. Laws, ch. 586 (Frederick County); 2009 Md. Laws, ch. 698 (Prince George's County); 2009 Md. Laws, ch. 669 (Baltimore County); 2005 Md. Laws, ch. 311 (Cecil County).

This understanding of the meaning of the term "business" appears to be consistent with the history of the Fill the Boot campaign here in Maryland. Without purporting to have made a detailed investigation or conclusive finding, we are unaware of any evidence that § 21-507(a) has ever been applied to prohibit fire fighters from carrying out the Fill the Boot campaign from the roadway, either before or after the 2008 opinion and the earlier advice letter. To the contrary, our limited inquiry indicates that the fire fighters have been conducting the Fill the Boot campaign here in Maryland at least since 1986 without restriction or citation by local law enforcement authorities. Indeed, as recently as August 2011, the Montgomery County State's Attorney's Office reassured the Montgomery fire fighters that their Fill the Boot campaign, if carried out in accord with internal fire department safety guidelines, "would be in compliance with Section 21-507. . . ." Letter from John D. Lalos, Assistant State's Attorney, to Richard Bowers, Chief, Montgomery County Fire and Rescue Service (August 17, 2011).

## C. *Prior Interpretations of the Statutory Language*

Neither the 2004 advice letter nor 2008 opinion examined the legislative history to ascertain the intent behind the enactment of § 21-507(a) and its subsequent application. Our prior advice was instead based primarily on the conclusion "that the term solicitation of business should be interpreted broadly in this context to accomplish the purposes of the statute, which are to promote the public safety."[9] Based on a more complete analysis of

---

[9] The larger statutory scheme relating to motor vehicles, although of little aid here, does not suggest a legislative intent to include charitable solicitation within the term "business." To the contrary, provisions relating to special registration plates and excise tax exemptions—like the county-specific solicitation provisions discussed in text—suggest that the General Assembly knows how to craft legislation that reaches charitable organizations. *See* TR §§ 13-619(c) (providing for issuance of special plates to "member of a nonprofit organization"), 13-810(a)(24) (exemption vehicles acquired by certain "religious, charitable, or volunteer organization[s]" from excise tax). And that charitable organizations are regulated under the Business Regulation Article, as the 2004 advice letter points out, says little about whether charitable solicitations were intended to qualify as "business" for purposes of traffic safety or other concerns. *Cf.*, *Young v. State*, 370 Md. 686, 712 (2002) (Legislature's placement of sex offender registry in the Criminal Procedure Article "does not necessarily indicate an intent on the part of

(continued . . .)

§ 21-507 and its relevant history, we conclude that our 2004 advice was incorrect; the Legislature did not intend to ban charitable solicitations from the roadway.[10]

Consistency with statutory purpose is, of course, an important element of the interpretive process, but there are other rules of construction that cut the other way. For example, interpreting the word "business" to include charitable solicitations may raise vagueness concerns within the context of individual prosecutions under § 21-507(a). *See Galloway v. State*, 365 Md. 599, 614 (2001) ("The void-for-vagueness doctrine as applied to the analysis of penal statutes requires that the statute be sufficiently explicit to inform those who are subject to it what conduct on their part will render them liable to its penalties.") (internal quotation marks omitted). More importantly, resort to the Legislature's *presumed* intent is not necessary here, where the extensive historical record indicates the General Assembly's *actual* intent not to include charitable donations within the scope of § 21-507(a).

Our conclusion here differs from that reached by the Louisiana Attorney General, the only other state attorney general who has addressed a state-law provision which, like § 21-507(a),

---

the General Assembly to punish sex offenders"). The provisions of the Business Regulation Article are at least equivocal with respect to the status of charitable organizations as businesses. *Compare* Md. Code Ann., Bus. Reg. § 6-101(d)(2) (2010 Repl. Vol.) (addressing the "principal place of business" of a charitable organization), *with id.*, § 6-620 (drawing a distinction between the "charitable organization" to be benefitted by donations collected in a "vending machine, canister, or other device or container for the deposit of money" and the "business placing the device or container, if not the charitable organization"). Neither statute addresses charitable organizations as businesses in a manner that would overcome the presumption that the Legislature intended the term to have its commonly accepted meaning.

[10] As explained in a 1987 opinion, "[w]e do not overrule a prior opinion simply because we might have resolved a close question the other way, were we first presented with it. At the same time, we will not perpetuate a significant mistake in legal reasoning." 72 *Opinions of the Attorney General* 200, 202 (1987). The 2008 opinion is not overruled; it remains valid because it "correctly treated the questions actually presented in [it]," 76 *Opinions of the Attorney General* 287, 294 (1991), which was whether a Gaithersburg ordinance prohibiting a person from making roadway solicitations was preempted by § 21-507.

was based on the pre-1968 version of the Uniform Vehicle Code. He was asked whether charitable organizations, volunteer organizations, or school or other civic groups could legally solicit funds on public roadways and concluded that "it is clear that the practice of soliciting funds from vehicles is prohibited in the State of Louisiana on interstate highways and state roadways." Op. La. Att'y Gen. No. 1998-487, 1998 La. AG LEXIS 545 at *4 (Dec. 29, 1998). The opinion does not analyze the specific issue, however, and does not indicate that the statutory provision in question—La. Rev. Stat. § 32:218 (2012)—had been addressed by the Louisiana Legislature in the same manner that the General Assembly has addressed § 21-507(a) here. Shortly after the opinion was issued, the Louisiana legislature amended the statute to permit solicitations by "a professional fire fighters association or other nonprofit organization . . . on behalf of bona fide charitable organizations," subject to the permission of the local governing authority. La. Rev. Stat. § 32:218(b) (2012). The Louisiana Attorney General later recognized that the 1998 opinion had been "statutorily superseded." Op. La. Att'y Gen. No. 03-0394, 2003 La. AG LEXIS 493 at *2 (Nov. 17, 2003).

Other states that have adopted the newer version of the Uniform Vehicle Code language have added provisions that relax the anti-solicitation ban for contributions, sometimes by creating a permitting system for solicitations by non-profit organizations. Some of these provisions allowing specified charitable solicitations in the roadway have been determined to be invalid as violating the free speech guarantee of the First Amendment, while others have withstood constitutional scrutiny. *See, e.g., Bischoff v. Florida*, 242 F. Supp. 2d 1226 (M.D. Fla. 2003) (exemption in Florida statute permitting highway solicitations on behalf of registered § 501(c)(3) charities violated U.S. Constitution); Op. Del. Att'y Gen., 2002 Del. AG LEXIS 12 (July 8, 2002) (exception in state motor vehicle law that allowed solicitations on roadway by some charitable organizations, but barred solicitations by others, was not content-neutral and therefore violated First Amendment); Op. Tex. Att'y Gen. No. DM-367, 1995 Tex. AG LEXIS 122 (Dec. 4, 1995) (state statute that permitted local governments to enact charitable exceptions to ban on roadway solicitations would be unconstitutional unless local ordinance was narrowly tailored); *but see People v. Tosch*, 501 N.E.2d 1253 (Ill. 1986) (upholding statute that banned roadway solicitation except for charitable organizations engaged in statewide campaigns).

Your question, however, focused on whether, under § 21-507(a), the fire fighters' annual "Fill the Boot" campaign to raise money for the Muscular Dystrophy Association may continue. We answer that question in the affirmative, having concluded that, based on the plain language of the provision and its legislative history, the General Assembly did not intend its use of the term "business" to include charitable solicitation. You did not ask us to address the First Amendment issues thus presented and we consider those issues to be beyond the scope of this Opinion. Nevertheless, as the court decisions cited above suggest, giving effect to the plain language and legislative intent of § 21-507(a) does raise constitutional concerns. It is possible, therefore, that a reviewing court would elect to construe the term "business" broadly to avoid those issues. *See VNA Hospice v. Dep't of Health & Mental Hygiene*, 406 Md. 584, 605-09 (2008) ("In light of the policy against deciding constitutional issues unnecessarily, we have consistently adhered to the principle that an interpretation which raises doubts as to a legislative enactment's constitutionality should be avoided if the language of the act permits.") (internal quotation marks omitted). In our view, however, that type of "saving construction" may not be necessary. "[S]tatutes carry a strong presumption of constitutionality," *Koshko v. Haining*, 398 Md. 404, 426 (2007), and this Office will defend enactments of the Legislature unless "clearly unconstitutional." 93 *Opinions of the Attorney General* 154, 161 n.12 (2008). Because we do not find that giving effect to the Legislature's actual intent here would be clearly unconstitutional, it is our opinion that the fire fighters may conduct their annual Fill the Boot campaign and enter the roadway to collect contributions without violating § 21-507(a).[11]

---

[11] Other types of solicitation, such as panhandling, would also be allowed by § 21-507(a), as we now construe it. *See Henry v. City of Cincinnati*, 2006 U.S. Dist. LEXIS 94704, 16-20 (S.D. Ohio 2006) ("After [*Village of Schaumburg v. Citizens for a Better Envir.*, 444 U.S. 620 (1980)], lower federal courts and state courts have equated panhandling to charitable solicitations, and analyzed them under the same framework."). We express no opinion herein about the constitutional permissibility of statewide legislation drawing a distinction between panhandling and charitable solicitations undertaken by public safety officials.

## III

## Conclusion

In our opinion, the General Assembly did not intend for its use of the term "business" in § 21-507(a) to extend the ban on roadside solicitations to the fire fighters' annual Fill the Boot campaign and other solicitations for charitable donations. The plain language of the statute and its legislative history belie any such intent. However, a statute that prohibits solicitation for some purposes but not others does raise constitutional issues. We therefore recommend that the Legislature consider revising the statute should it wish to ensure that charitable solicitations continue and without compromising the public safety goals of the Transportation Article.

Douglas F. Gansler
*Attorney General*

Sandra Benson Brantley
*Assistant Attorney General*

Adam D. Snyder
*Chief Counsel*
   *Opinions & Advice*