*City of Brunswick, et al. v. Christoper Handler*, No. 1437, September Term, 2024. Opinion by Kenny, J. Filed March 2, 2026.

**MUNICIPAL, COUNTY AND LOCAL GOVERNMENT**

The Maryland Police Accountability Act (MPAA) provision governing trial board process for disciplinary actions applies to "all matters for which a police officer is subject to discipline[,]" and is not limited to matters involving a member of the public.

Circuit Court for Frederick County
Case No.: C-10-CV-24-000331

CITY OF BRUNSWICK, ET AL.

v.

CHRISTOPHER HANDLER

Wells, C.J.,
Leahy,
Kenney, James A., III.
    (Senior Judge, Specially Assigned),

JJ.

Opinion by Kenney, J.

Filed: March 2, 2026

Pursuant to the Maryland Uniform Electronic Legal
Materials Act (§§ 10-1601 et seq. of the State
Government Article) this document is authentic.



Gregory Hilton, Clerk

After Christopher Handler, appellee, received two letters of reprimand from his employer, the Brunswick Police Department, he requested a trial board hearing. When that request was denied, he filed a petition for writ of mandamus in the Circuit Court for Frederick County against appellants, the City of Brunswick and its chief of police, Kevin Grunwell. After a hearing, the circuit court determined that appellants failed to comply with the hearing requirement set forth in Md. Code Ann., Public Safety ("Public Safety") § 3-106(a)(1). In their timely-noted appeal, appellants ask the following question:

> Did the Circuit Court err by entering an order granting a writ of mandamus and finding that [t]he City of Brunswick and Kevin Grunwell failed to comply with the trial board hearing requirement for disciplinary procedures set forth in the Maryland Police Accountability Act of 2021?

For reasons we shall discuss, we answer that question in the negative and affirm the judgment of the circuit court.

## BACKGROUND

The facts before us in this appeal are straightforward and undisputed. Mr. Handler is a corporal with the Brunswick Police Department in Frederick County, Maryland. On August 24, 2023, he received two letters of reprimand from appellants – one relating to a speeding complaint, and the other relating to an allegation of unprofessional conduct towards a supervisor. Neither letter of reprimand related to conduct involving a member of the public.[1] Mr. Handler requested a trial board hearing under Public Safety § 3-106(a)(1),

---

[1] The record reflects that the speeding complaint was made by a private citizen who happened to be a federal police officer. The private citizen "advised that he did not wish to make a formal complaint but felt the need to contact the department" after observing Mr. Handler speeding. Because neither party disputes that the speeding complaint did not

(continued…)

which appellants denied. Mr. Handler filed a petition for writ of mandamus seeking to compel appellants to provide that process. After a hearing, the circuit court found that appellants failed to comply with Public Safety § 3-106(a)(1) in denying Mr. Handler's request and granted Mr. Handler's petition for writ of mandamus. Appellants noted the instant appeal.

## STANDARD OF REVIEW

Generally, we review an action that has been tried without a jury "on both the law and the evidence[,]" and we do not "set aside the judgment of the trial court on the evidence unless clearly erroneous[.]" Md. Rule 8-131(c). The deference shown to the trial court's "factual findings under the clearly erroneous standard does not, of course, apply to legal conclusions." *Nesbit v. Gov't Emps. Ins. Co.,* 382 Md. 65, 72 (2004). When, as here, the ruling on appeal "'involves an interpretation and application of Maryland statutory and case law, [we] must determine whether the [circuit] court's conclusions are legally correct under a *de novo* standard of review.'" *Id.* (quoting *Walter v. Gunter*, 367 Md. 386, 392 (2002)); *see also Wiggins v. Griner*, 155 Md. App. 530, 533 (2004). Because the parties stipulated to the facts before the circuit court and do not challenge the court's factual findings, our task is to determine whether the court's ruling was "legally correct[.]" *Nesbit*, 382 Md. at 72 (cleaned up).

---

"involv[e]" a member of the public, we will assume for the purposes of this opinion that it did not.

**DISCUSSION**

***Contentions***

Appellants assert that "[a]t the heart of the instant appeal are the parties' competing interpretations" of Public Safety § 3-106. They contend that, "when viewed in the statutory scheme of the Act[, Public Safety § 3-106] pertains to misconduct involving a member of the public and a police officer," and because neither letter of reprimand involves a member of the public, the denial of Mr. Handler's request for a trial board process was proper.

Mr. Handler contends that "there is only one reasonable interpretation" of Public Safety § 3-106(a)(1), which states that "every law enforcement agency in the state is required to establish a trial board process to adjudicate <u>all</u> matters for which a police officer is subject to discipline." In support of that contention, he states that there is "no differentiation in § 3-106(a)(1) between allegations of police misconduct involving a member of the public and allegations of police misconduct that do not involve a member of the public[,]" and therefore, the circuit court properly determined that Public Safety § 3-106(a)(1) applies to "all matters for which a police officer is subject to discipline."

***Analysis***

**I.     Relevant Provisions of the MPAA**

Sections 3-101 to 3-113 of the Public Safety Article were enacted in 2021 with the passage of the Maryland Police Accountability Act ("MPAA").[2] In pertinent part, the

---

[2] Five bills were enacted as part of the Maryland Police Accountability Act of 2021: Senate Bill 178, Senate Bill 71, Senate Bill 600, House Bill 670, and Senate Bill 786. *See Maryland General Assembly*, https://perma.cc/B5C8-F3HT (last accessed January 15,

(continued…)

MPAA provides that "[t]he Maryland Police Training and Standards Commission shall develop and adopt, by regulation, a model uniform disciplinary matrix for use by each law enforcement agency in the State" and that "[e]ach law enforcement agency shall adopt the uniform State disciplinary matrix for all matters that may result in discipline of a police officer." Public Safety § 3-105(a)-(b). The Maryland Statewide Model Disciplinary Matrix (the "Matrix") provides that the Matrix is the "required framework through which all matters of discipline will be imposed as a result of a sustained disposition from an administrative investigation into an officer's misconduct."

Police misconduct is defined by the MPAA as "a pattern, a practice, or conduct by a police officer or law enforcement agency that includes: (1) depriving persons of rights protected by the constitution or laws of the State or the United States; (2) a violation of a criminal statute; and (3) a violation of law enforcement agency standards and policies." Public Safety § 3-101(g). The Matrix provides examples of misconduct, ranging from less

2026). Senate Bill 178 set forth additional requirements for the application and execution of no-knock search warrants. *Final Bill Text*, S.B. 178, 2021 Leg., 442 Sess. (Md. 2021). Senate Bill 71 required the implementation and the use of body-worn cameras when officers engage with civilians and set out procedures for monitoring and addressing issues regarding uses of force by officers. *Final Bill Text*, S.B. 71, 2021 Leg., 442d Sess. (Md. 2021). Senate Bill 600 established an independent investigative unit in the Office of the Attorney General to investigate "police-involved death[s] of . . . civilians." *Final Bill Text*, S.B. 600, 2021 Leg., 442d Sess. (Md. 2021). In addition, Senate Bill 600 prohibited police departments from acquiring "weaponized . . . vehicle[s,] . . . destructive device[s,] firearm silencer[s,] or . . . grenade launcher[s]" from military equipment surplus programs. *Id*. House Bill 670 repealed the Law Enforcement Officers' Bill of Rights and required each county in Maryland to establish a police accountability board. *Final Bill Text*, H.B. 670, 2021 Leg., 442d Sess. (Md. 2021). Control of the Baltimore City Police Department was returned to the City of Baltimore under Senate Bill 786. *Final Bill Text*, S.B. 786, 2021 Leg., 442d Sess. (Md. 2021).

serious violations such as "improper attire and grooming" and being "[l]ate for duty assignment[,]" to the most severe violations, including "[t]ampering or manufacturing of evidence" or "[i]ntentional malicious and unjustified use of force resulting in serious bodily injury or death[.]"

Further, the MPAA authorizes the Maryland Police Training and Standards Commission to adopt implementing regulations. Public Safety § 3-114. The regulations implemented pursuant to the MPAA appear in two Code of Maryland Regulations ("COMAR") chapters: COMAR 12.04.09, which focuses on general disciplinary processes, and COMAR 12.04.10, which establishes the Matrix. Among other things, COMAR 12.04.10.04 provides various disciplinary ranges, including letters of reprimand. COMAR 12.04.10.04B(1)(b). The Matrix provides that letters of reprimand shall "detail[] the officer's wrongful actions and state[] their actions have been deemed inappropriate or unacceptable."

The specific provision at issue in the matter before us, Public Safety § 3-106(a)(1), states that: "[E]ach law enforcement agency shall establish a trial board process in accordance with this section to adjudicate all matters for which a police officer is subject to discipline." Public Safety § 3-106(a)(1).[3] A trial board decision may be appealed to the circuit court within thirty days; otherwise, the trial board decision is final. Public Safety §

---

[3] An exception, which is not directly relevant to the matter before us, is set forth in Public Safety § 3-106(a)(1). *See* Public Safety § 3-106(a)(2) ("A small law enforcement agency may use the trial board process of another law enforcement agency by mutual agreement.").

3-106(k)-(l). With certain exceptions, "[p]roceedings of a trial board shall be open to the public[.]" Public Safety § 3-106(e).

## II.    Statutory Interpretation

As the Supreme Court of Maryland has stated, "statutory interpretation begins, and usually ends, with the statutory text itself[.]" *Price v. State*, 378 Md. 378, 387 (2003). Indeed, "before judges may look to other sources for interpretation, first there must exist an ambiguity within the statute, i.e., two or more reasonable alternative interpretations of the statute." *Id*. Therefore, we look first to the statute's plain language to decide "what parts, if any, are 'ambiguous or not clearly consistent with the statute's apparent purpose.'" *Blood v. Stoneridge at Fountain Green Homeowners Ass'n, Inc.*, 242 Md. App. 417, 427 (2019) (quoting *Hailes v. State*, 442 Md. 488, 495 (2015)). Where the statutory language "is free from such ambiguity, [we] will neither look beyond the words of the statute itself to determine legislative intent nor add to or delete words from the statute[.]" *Price*, 378 Md. at 387-88. In other words, when "the meaning of the language is clear and unambiguous," we presume the General Assembly "meant what it said." *Willis v. Montgomery Cnty.*, 415 Md. 523, 536 (2010).

As noted above, the statutory provision at issue in this appeal, Public Safety § 3-106(a)(1), clearly states that "each law enforcement agency shall establish a trial board process in accordance with this section to adjudicate all matters for which a police officer is subject to discipline." In short, we are not persuaded that there is more than one reasonable interpretation of the statutory text. The provision unequivocally requires every law enforcement agency to establish a trial board process "to adjudicate *all* matters for

which a police officer is subject to discipline." *Id.* (emphasis added). Neither Public Safety § 3-106(a)(1), nor any other provision within the MPAA, suggests any limitations or exclusions on the types of matters to be adjudicated by the trial board process. *See* Public Safety § 3-101 *et seq*. We are persuaded that the General Assembly's unconditional use of "all matters" includes those matters now at issue before us.

Notably, appellants neither point to an ambiguity within the language of the statute itself, nor do they advance a reasonable alternative interpretation of that language. Instead, they urge that we look to various sources outside of the statute to conclude that "[Mr.] Handler was not entitled to a trial board process" because the letters of reprimand "did not involve complaints of police misconduct involving a member of the public and a police officer[.]" In support of their position, appellants assert that Public Safety § 3-106 "should not be read and considered in a vacuum[.]" We agree that the plain language of a statute is not to be "interpreted in isolation." *Kushell v. Dep't of Nat. Res.*, 385 Md. 563, 577 (2005). But what appellants fail to acknowledge is that, in the absence of an ambiguity within the statute, the search for "'legislative intent ends[,]'" and a "'resort to the various, and sometimes inconsistent, external rules of construction'" is not necessary. *Id.* (quoting *Arundel Corp. v. Marie*, 383 Md. 489, 502 (2004)).

That said, however, our conclusion is consistent with Public Safety § 3-101(g)(3), which defines police misconduct broadly to include "violation[s] of law enforcement agency standards and policies[,]" and Public Safety § 3-105, which provides the authority for the Matrix, which is the "framework through which all matters of discipline will be imposed[,]" including such matters relating to attire, grooming, and tardiness. In other

7

words, Public Safety § 3-106(a)(1) need not be read in a vacuum to conclude that it applies to all levels of misconduct, and not only misconduct involving a member of the public.

Indeed, accepting appellants' argument that Public Safety § 3-106(a)(1) applies only to police misconduct involving a member of the public would require us to "add words to the statute that are not there." *Baires v. State*, 249 Md. App. 62, 80 (2021). We would decline to do that even if we had "determined that an omission from a statute was inadvertent[.]" *Rosemann v. Salsbury, Clements, Bekman, Marder & Adkins, LLC*, 412 Md. 308, 327 (2010) ("Even where we have determined that an omission from a statute was inadvertent, we have declined to supply words to reach a desired result."); *see also Birmingham v. Bd. of Pub. Works*, 249 Md. 443, 449 (1968) ("Nor have we the power to correct an omission in the language of a statute, even although the omission was the obvious result of inadvertence."). We do not find, and we decline to add, language limiting the requirements of Public Safety § 3-106(a)(1) only to matters involving a member of the public.

Appellants argue that interpreting Public Safety § 3-106(a)(1) as we have will result in a "significant expansion of police officer disciplinary rights" in that a trial board will be mandated "for every single type of discipline a law enforcement officer might receive during that law enforcement officer's tenure[.]" That might be true but it does not alter the fact that, when a statute is unambiguous, it is presumed that the General Assembly meant what it said. *Willis*, 415 Md. at 536. Public Safety § 3-106(a)(1) clearly states that the trial boards shall "adjudicate all matters for which a police officer is subject to discipline." Although the resulting responsibilities imposed upon law enforcement agencies may be

significant, it is not our role "to supply words [into a statute] to reach a desired result." *Rosemann*, 412 Md. at 327. If the alleged result was in error or simply an oversight, it may be corrected by the General Assembly.

There being no dispute that Mr. Handler was "subject to discipline" for both letters of reprimand, we hold, under the plain and unambiguous language of Public Safety § 3-106(a)(1), that appellants' denial of his request for trial board process was error. In absence of any ambiguity in the statute, there is no need to look beyond the language of the statutory text to interpret its meaning, but we will do so to confirm our conclusion. *See In re Abhishek I.*, 255 Md. App. 464, 475 (2022) (noting that, even where a statute is unambiguous, "we may look to legislative history to confirm our conclusion regarding the intent of a statute"); *accord Blackstone v. Sharma*, 461 Md. 87, 113 (2018) (concluding that, "[e]ven in instances 'when the language is unambiguous, it is useful to review legislative history of the statute to confirm that interpretation and to eliminate another version of legislative intent alleged to be latent in the language'" (quoting *State v. Roshchin*, 446 Md. 128, 140 (2016))).

### III. Legislative History of the MPAA

Appellants contend that "[t]he language of § 3-106 of the [MPAA] is ambiguous when considered with the [MPAA's] purpose and the provisions of the former [Law Enforcement Officer's Bill of Rights.]" They urge our consideration of "the legislative history and the implementing COMAR Regulations adopted in furtherance of the [MPAA]" in interpreting the statutory language. Mr. Handler disagrees that Public Safety § 3-106(a)(1) is ambiguous, but nonetheless contends that legislative history, including a

9

2022 amendment to the MPAA, reflects an intention to "increase[] the applicability of the trial board process to all internal and external matters that lead to discipline, rather than limiting the applicability of that process[.]"

The Law Enforcement Officer's Bill of Rights ("LEOBR"), the predecessor to the MPAA, was enacted in 1974 "'to guarantee that certain procedural safeguards be offered to police officers during any investigation and subsequent hearing which could lead to disciplinary action, demotion, or dismissal.'" *Blondell v. Baltimore City Police Dep't*, 341 Md. 680, 691 (1996) (quoting *Abbott v. Admin. Hearing Bd.*, 33 Md. App. 681, 682 (1976)); *see also Manger v. Fraternal Ord. of Police, Montgomery Cnty. Lodge 35, Inc.*, 239 Md. App. 282, 294 (2018) ("The broad purpose of the LEOBR is to provide law enforcement officers with heightened procedural rights and protections when they are under internal investigation.").

As noted, the LEOBR was repealed when the MPAA became effective in 2022, following police reform efforts after the death of George Floyd and others at the hands of police. 2021 H.B. 670, Speaker Jones 2/9/21; *see also* 110 Md. Op. Atty. Gen. 3 at *17 (2025) ("The original impetus behind the General Assembly's 2021 police reform efforts was the murder of George Floyd and similar incidents where members of the public were injured or killed by police officers."). For that reason, House Bill 670, which primarily focused on the relationship between law enforcement and the public, sought to bring greater transparency and more accountability to policing in Maryland. 2021 H.B. 670, Speaker Jones 2/9/21; 110 Md. Op. Atty. Gen. 3. Among other things, House Bill 670 created a police accountability board, defined police misconduct and called for the creation

10

of a trial board process and the Matrix. 2021 H.B. 670 at 28-40. In 2021, with the passage

of several bills, including House Bill 670, the MPAA was enacted. 2021 Md. Laws, ch. 59.

Before becoming effective in July of 2022, however, several provisions of §§ 3-101

to 3-113 of the Public Safety Article were revised by Senate Bill 763. 2022 Md. Laws, ch.

141; 2022 S.B. 763. Among Senate Bill 763's stated purposes was to "specify[] that the

purpose of a certain trial board process is to adjudicate **all** internal and external matters for

which a police officer is subject to discipline[.]" 2022 S.B. 763 at 2 (emphasis added). To

that end, Senate Bill 763 added the word "**all**" before "matters for which a police officer is

subject to discipline" by Public Safety § 3-106(a)(1), 2022 S.B. 763 at 20 (emphasis

added), and revised Public Safety § 3-105(b) to clarify that the disciplinary matrix

contemplated would be "for **all** matters that may result in discipline of a police officer." *Id*.

(emphasis added). Each of these amendments indicate the intent to broaden, not limit, the

reach of the MPAA, including the provision at issue before us.

In their reply brief, appellants contend that legislative history detailed in a 2025

Maryland Office of Attorney General opinion ("OAG opinion") indicates that the MPAA

"is subject to more than one reasonable interpretation." *See* 110 Md. Op. Atty. Gen. 3.

Appellants assert that:

> [T]he OAG Opinion makes clear that "[t]he [MPAA] as a whole is concerned
> predominantly with misconduct involving members of the public," *id*. at \*16,
> the legislative intent focused on addressing incidents where "members of the
> public were injured or killed by police officers,' *id*. at \*17, and the enactment
> of the [MPAA] was motivated by the desire of the Maryland Legislature to
> "restore trust between the public and law enforcement" and "provide greater
> public oversight,["] *id*. at \*17. The OAG Opinion also clarified the legislative
> history and intent of the [MPAA] as stated by the Chair of Senate Judicial
> Proceedings Committee stating the process "from the PAB to the charging

11

committee, that's for public [complaints]," *id*. at \*14, and, as stated by counsel to the Speaker when "asked by a legislator whether the bill's process was 'just for public complaints,' told a House subcommittee that it was, and that 'the internal stuff to the police department, insubordination, showing up late, all of that stuff will still be handled internally,'" *id*. at \*17[.]

The legislative history appellants cite, however, relates to the former version of the MPAA. *See* 110 Md. Op. Atty. Gen. 3 at \*17 ("It thus appears that the Legislature understood that, for the most part, the [MPAA] as enacted in 2021 did not address the process for handling fully internal misconduct complaints."). The OAG opinion went on to note that the purpose of the enactment of the 2022 revisions was to "clarify the applicability of certain provisions[,]" including that "[t]he disciplinary matrix applies to 'all matters that may result in discipline,' regardless of whether a member of the public is involved." 110 Md. Op. Atty. Gen. 3 at \*17-18.

Nor are we persuaded by appellants' assertion that the applicable COMAR provisions "reflect clearly the purpose of the [MPAA] as being for the purpose of establishing an administrative process for handling allegations and complaints of police misconduct involving a member of the public[.]" Although appellants are correct that COMAR 12.04.09.01 provides that chapter nine of COMAR 12.04 "establishes a civilian process to receive and process allegations of police officer misconduct involving a member of the public," COMAR 12.04.10 provides that the Matrix is "required for all matters that may result in discipline of a police officer." COMAR 12.04.10.01B. In other words, the COMAR provisions, taken as a whole, do not reflect an intention to exclude non-public matters from Public Safety § 3-106(a)(1)'s reach.

Finally, appellants, citing repealed LEOBR provisions, argue that "[i]f this Court sides with [Mr. Handler's] arguments presented in this appeal, it will result in an outcome that interprets the [MPAA] as being even more pro-police officer rights than [the] LEOBR was." To support this argument, they assert that under the LEOBR, hearing boards were provided only if there was "a recommendation of demotion, dismissal, transfer, loss of pay, reassignment, or similar action that is considered punitive[,]" Public Safety § 3-107(a)(1) (2018 Repl. Vol.) (repealed 2022) (cleaned up), or for minor infractions that may result in "suspension of 3 days without pay or a fine of $150[,]" Public Safety§ 3-111(b)(2) (2018 Repl. Vol.) (repealed 2022) (cleaned up). Therefore, they argue that affirming the circuit court's decision would result in "a significant expansion" of the access to trial boards, which, they contend, "was not the intention" of the General Assembly. We are not persuaded. Indeed, such an expansion would not necessarily be inconsistent with an intention to increase transparency in policing. *See* 2021 H.B. 670, Speaker Jones 2/9/21; *see also* Public Safety § 3-106(e).

In sum, we hold Public Safety § 3-106(a)(1) is not ambiguous, and the legislative history of the MPAA does not persuade us otherwise. Accordingly, we shall affirm the circuit court.

**JUDGMENT OF THE CIRCUIT COURT FOR FREDERICK COUNTY AFFIRMED. COSTS TO BE PAID BY APPELLANTS.**